THE CITY OF PENSACOLA, *et al., Appellant,* v. MAX L. BEAR, W. A. LEONARD, F. F. BINGHAM, B. R. COLEMAN AND OSCAR COLLINS, *Appellees.*

Opinion Filed April 6, 1922.

1. While the granting, denial or dissolving injunctions is discretionary within the lemitations of applicable rules of law and while the dissolution of a restraining order is not a matter of course when the equities of the bill are denied by answer, yet if the answer by appropriate denials and averments sufficiently meets the asserted equities upon which a restraining order was granted, the order should be dissolved upon proper proceedings duly taken, if the answer is not controverted by proper procedure as provided by the statutes.

2. The authority given by Chapter 5530, Acts of 1915, to the City of Pensacola relative to "establishing,, constructing and equipping one or more municipal wharves or docks including dredging and other necessary harbor improvements, and the purchase of property necessary to supplement city property to be used as sites for such purposes," cannot fairly be said to be so limited and restrictive in its terms and purpose, as to exclude power to purchase property that is suitably located and the improvements thereon appropriately constructed for use in establishing, constructing and equipping one or more municipal wharves or docks.

3. Necessarily a wide discretion is vested by Chapter 5530, Acts 1915, in the city commissioners of Pensacola in executing the powers conferred upon them, and such discretion will not be controlled by the courts when the authority conferred by the law is not clearly violated or the discretion palpably abused.

An Appeal from the Court of Record for Escambia County; C. Moreno Jones, Judge.

Reversed.

*John B. Jones, Jno. P. Stokes* and *Geo. P. Wentworth,* for Appellents.

F. W. Marsh and John S. Beard, for Appellees.

WHITFIELD, J.—Chapter 5530 Acts of 1915, authorized the City of Pensacola to issue negotiable interest bearing bonds to ''be used for the refunding of the present indebtedness of the city, and for such other municipal purposes as may be provided by ordinance and approved by a majority of the votes cast at an election held for the purpose.'' The statute requires the ordinance to ''express the purpose and approximately the amounts for each purpose, for which such issues of bonds are to be used,'' etc. An ordinance of November 29, 1912, provided for an issue of bonds ''for the purpose of establishing, constructing and equipping one or more municipal wharves or docks, including dredging and other necessary harbor improvements, and the purchase of property necessary to supplement city property, to be used as sites for such purposes, the sum of Three Hundred Thousand ($300,000.00) Dollars, or so much thereof as may be necessary.'' The ballots used at the approving election followed the ordinance and the proposed issue of bonds was approved by the voters at an election held December 30, 1912. This issue of bonds was approved by Chapter 6747, Acts of 1913. The bonds were sold in 1921, and the city authorities were negotiating with Wells *et al.,* for the purchase through a proposed deed of conveyance of property for dock and wharf purposes, when a restraining order was granted, it being alleged on the facts set up in the bill of complaint brought by certain taxpayers, that the city commissioners have no authority of law to purchase a dock for the city, that the power is ''limited to establishing, constructing and equipping mu-

nicipal wharves or docks, and for the purchase of property necessary to be used as sites for such purposes,'' while the acts of the city commissioners contemplated, if consummated, will in effect be the purchase of a dock; that section 26 of the charter of the city authorizes the city commissioners by ordinance to construct, own, equip and operate wharves and docks, but not to purchase wharves or docks; that the title to the property is not in the proposed grantors, but is in the State of Florida; that the dock proposed to be purchased is not established or equipped as a municipal dock, and the balance of the fund left after payment for the said property, will not be sufficient to establish, construct or equip any kind of a municipal dock for service as contemplated by the ordinance and by the approving electors, and that there is no other fund available therefor; that the proposed conveyance to the city reserves to the grantors an estate and title to a portion of the land for five years with the privilege to the city to buy such reservation at stated sums each year, which it is alleged is in effect a grant by the city of a franchise for the use and occupancy by the grantors of the city wharf property, which right or franchise is not duly granted as required by law; and that the acts complained of are ''without authority of law and a gross abuse of the discretion vested in the commissioners, in the establishment, construction and equipment of municipal docks.''

By answer the defendants controverted the allegations upon which equitable relief are predicated, and among other pertinent matters, averred:

''13. That before deciding to acquire the property described in the proposed deed from Wells et al., to the City of Pensacola, the Board of City Commissioners of the City of Pensacola made a careful and exhaustive examin-

ation of all available sites for the establishment, construction and equipment of a municipal dock in said city, and carefully and exhaustively considered all the reasons urged, and that were apparent, or that could be ascertained by diligent search and inquiry, in favor or against all of such available sites, and called into conference an impartial, able and experienced civil engineer in the person of the United States Engineer for the Port of Pensacola, and also the City Engineer, in the regular employ of the said city, and acting according to their best ability and information, upon the advise of said United States Engineer and said City Engineer, the said Board of Commissioners of the City of Pensacola did determine and decide that the said Palafox Wharf property, being the property described in the proposed deed from Wells *et al.*, to the City of Pensacola, was most advantageous to the said City of Pensacola, and that, within the limits of the funds available for that purpose, the said City of Pensacola could establish, construct and equip an adequate municipal dock on said property, and did determine and decide to acquire the same, and that it was and is, to the best interest of the said City of Pensacola to acquire the same for such purpose, upon the terms and conditions hereinbefore alleged, and as recited in substance and effect by the allegations of the bill of complaint; and that, in making such decision and determination the said Board of City Commissioners were acting by authority of law and within the discretion with which they were clothed by law, and in all respects acting in good faith and for the best interest of the said City of Pensacola. That, at the request of the said Board of City Commissioners of said City of Pensacola, the said United States Engineer for the Port of Pensacola submitted in writing the opinion of said engineer, a copy of which is hereto attached, marked Exhibit 6, and made a part hereof in the same

manner and to the same effect as if herein set out in full, and that said report has the unqualified approval of the engineer regularly employed by the City of Pensacola.

"14. That the Board of Commissioners of the City of Pensacola, in the establishment, construction, and equipment of a municipal dock for said city was under a dual responsibility of providing such municipal dock and also providing for the payment of the annual interest on the outstanding bonds of said city, sold for such purpose, and to provide a sinking fund for the ultimate retirement of said bonds; and for the purpose of establishing, constructing, and equipping such municipal dock, the said Board of Commissioners were restricted to the amount realized from the sale of such bonds, and were not authorized to spend any further sums of money therefor.

"That, all the available sites in the said City of Pensacola for such municipal dock, save Palafox Wharf site, were unimproved and consisted only of land lying under the waters of the Bay of Pensacola, and to acquire certain of said sites would have required a large expenditure of funds, and any of such sites would have necessitated an additional large expenditure for dredging to enable large vessels to come alongside of a municipal dock located upon any of such sites; that, acting within the available funds, using any of the other available sites for the purpose, the said Board of Commissioners would have been obliged to construct a pier wholly of wood with superstructure of wood, exposing such pier to the ceaseless activities of worms and barnacles and other parasites in the waters of the Bay of Pensacola, which, in the opinion of the Board of Commissioners would require a continual outlay for replacement, or would result in the ultimate destruction of such a pier. That a delay of at least one year would result from

undertaking to construct a municipal dock at any other of the available sites and in the meantime the City of Pensacola would be required to pay interest on the outstanding bonds and would be without a dock of any sort during said period. That it would have been only with great difficulty and uncertainty that the said·Board of City Commissioners could visualize the character and extent of the municipal dock that would result twelve months hence from plans now submitted, and said Board of City Commissioners were of the opinion that to construct a dock 'from the ground up' might expose the said City of Pensacola to the likelihood of an incompleted dock and necessitate the expenditure of additional funds for its completion, and such funds were not available; that if such dock should be constructed at any other available sites the said Palafox Wharf would continue in private ownership as a strong competitor of said municipal dock, and having an established business resulting from more than forty years use, and being located at the foot of the principal thoroughfare of the City of Pensacola, would divert from said municipal dock all local and coastwise traffic, and would probably compel said municipal dock to rely exclusively upon ocean going traffic for income, and that there is now no ocean going traffic coming to the Port of Pensacola that would insure any income from such municipal dock, all ocean going traffic and out of the Port of Pensacola now being handled exclusively by railroad docks, owned and operated in conjuction with such carriers.

"That the said Palafox Wharf consists, save for a small part of a wooden wharf, of a bulkheaded fill of sand and rock, impervious to damage by worms, barnacles and other water parasites, and so constructed and protected as to last for an indefinite period; having already been used for

more than forty years; that said wharf is located at the foot of the principal thoroughfare of said City of Pensacola, and is already served by the Pensacola Electric Company's Railway, which has tracks extending over said wharf, and is within one hundred yards of the tracks of the Louisville & Nashville Railroad Company, and which can be connected with said Palafox Wharf by means of a short spur track, and that said Louisville & Nashville Railroad Company is the principal railroad serving said Port of Pensacola; that said Palafox Wharf already has an established business from boats and other traffic insuring an approximate income of twenty thousand dollars per year, and that, said dock would be available to the said City of Pensacola, at the moment it should be turned over to the said city, and said income would be available to said city from the same moment, and would thereby insure from the beginning an income adequate, in the opinion of the Board of City Commissioners, to pay the interest on the outstanding bonds and provide a sinking fund for their ultimate retirement without burdening the taxpayers of said municipality, and would at the same time, leave the said City of Pensacola as the owner of said municipal dock without competition by ocean going vessels, other than such as would be affected by the docks owned and operated by the railroads serving Pensacola, as aforesaid; that now, and for many years prior hereto, ocean going vessels as well as small local and coastwise vessels, have been using said Palafox Wharf as a dock, discharging and receiving cargoes, and that same is adquate for all the purposes of a municipal dock, and by means of property already owned by said City of Pensacola, lying parallel and contiguous to said Palafox Wharf, both on the east and west side of same, the said dock is capable of development and expansion to a width of more than 500 feet east and west, and

from the shore line to the pier head line established by the United States Government, which would be longer than any dock in said port of Pensacola, and several times wider than any dock in said port, and many times larger than the requirement of a municipal dock at the Port of Pensacola will ever call for, in the opinion of the defendants.

"That for the reasons given, and acting upon the advice of the United States Engineer for the Port of Pensacola, and upon the advice of the civil engineer regularly employed by the City of Pensacola, and after consulting with a large number of prominent citizens and taxpayers of the said City of Pensacola, and acting only from good motives and for the purpose of advancing the interest of said city, and conserving the interests of the taxpayers of said city, the said Board of Commissioners did determine and decide to acquire said Palafox Wharf upon the terms hereinbefore recited.

"15. That, after acquiring said Palafox Wharf upon the terms and conditions stated, and for the consideration stated, there would remain on hand such money as to be sufficient to adequately establish, construct and equip said dock as a municipal dock, and provide adequate warehouses and facilities for handling all of the traffic and business that would come to said dock.

"16. That, the area of said dock reserved in the proposed deed from Welles et al., to the City of Pensacola, would not interfere in anywise with the establishment, construction and equipment of a municipal dock by the City of Pensacola, and would not interfere in any wise with the same, and said dock would be adequate, complete and satisfactory in every respect; that the part of said dock reserved by said Welles, now, and has been, for many years;

used as a place for fishing vessels owned by said Welles, to dock and discharge cargoes of fish, and to store said fish, except of recent years the said Welles has constructed thereon a small ice plant used to manufacture ice for the use of his fishing vessels and his fish house, and is not now used, and has not for many years been used, as a dock for the use of vessels carrying passengers or freight, or otherwise, but, that the remainder of said dock, is now being used, and has for many years been used, as a dock for vessels carrying freight and passengers, and experience has demonstrated that the remainder of said dock has been adequate for all of such purposes.

"17.   That it was impossible for the City of Pensacola to acquire said Palafox dock without the reservation made in the proposed deed by said Welles, because the price of same was beyond the available funds, and because if the funds had been available to acquire said dock without such reservation, it would have necessitated the said Welles removing his fish business therefrom, and that it was only by reason of such reservation that the Board of Commissioners are enabled to close with said Welles for the purchase of said dock for the consideration mentioned, and to leave on hand sufficient funds to adequately establish, construct and equip the same into a municipal dock."

Subsequently the court denied motions to dissolve the restraining order or temporary injuction, and the defendants appealed.

While the granting, denial or dissolving injunctions is discretionary within the limitations of applicable rules of law, and while the dissolution of a restraining order is not a matter of course when the equities of the bill are denied by answer, yet if the answer by appropriate denials and averments sufficiently meets the asserted equities upon

which a restraining order was granted, the order should be dissolved upon proper proceedings duly taken, if the answer is not controverted by proper procedure as provided by the statutes. Secs. 3136, 3178, Rev. Gen. Stats. 1920; Robbins v. White, 52 Fla. 513, 42 South. Rep. 841; 39 Fla. 745.

The authority given of establishing, constructing, and equipping one or more municipal wharves or docks including dredging and other necessary harbor improvements, and the purchase of property necessary to supplement city property to be used as sites for such purposes,''ʹcannot fairly be said to be so limited and restrictive in its terms and purpose, as to exclude power to purchase property that is suitably located and the improvements thereon appropriately constructed for use in establishing, constructing and equipping one or more municipal wharves or docks. It appears from the answer, if not from the bill itself, that the property designed to be purchased is suitably located and constructed for the purposes that are within the authority conferred. The reservation for five years of the use of a portion of the property by the proposed grantors for a continuance of their present business thereon not in competition with the city and apparently not impeding its purposes is not an insurmountable obstacle when the reservation can be purchased under the terms of the deed of conveyance and the reservation is not expressly or impliedly prohibited by law or by the authority conferred upon the city commissioners. Necessarily a wide discretion is vested in the city commissioners in executing the powers conferred upon them, and such discretion will not be controlled by the courts when the authority conferred by the law is not clearly violated or the discretion palpably abused. See Towle v. State, 3 Fla. 202; State *ex rel.* Moody v. Barnes, 25 Fla. 298, 5 South.

Rep. 722; State *ex rel.* Kennerly v. Amos, 78 Fla. 552, 83 South. Rep. 303; Gamble v. State, 61 Fla. 233, 54 South. Rep. 370; Pensacola & A. R. Co. v. State, 25 Fla. 310, 5 South. Rep. 833. The reservation is not the grant of a franchise or right in the public property of the city.

The answer meets the allegations of the bill that the amount proposed to be paid for property as contemplated will not leave sufficient funds to establish, construct and equip one or more municipal wharves or docks. While the bill waived an answer under oath, the answer is sworn to and may be regarded as an affidavit on the motion to dissolve the temporary injunction. The complainants did not by any evidence meet the explicit and responsive averments of the answer.

The city commissioners have no power to contract a liability of the city for loss of property reserved to the grantors in the proposed conveyance, and such a provision would be inoperative.

Should the city commissioners attempt to exceed or abuse their authority in perfecting the contemplated purchase, appropriate relief may be had in due course of law.

In view of the provisions of Section 5, Chapter 8537, Acts of 1921, granting and vesting the title here alleged to be in the State, the alleged present ownership of the State is not sufficient to warrant a continuance of the temporary injunction that is hereby adjudged and ordered to be dissolved.

Reversed.

BROWNE, C. J., AND TAYLOR, J., concur.

ELLIS AND WEST, J. J., dissent.