J. N. WILLIS, L. E. SMITH, J. E. PASLEY, M. D. CLANCY, N. E. GRIFFIN, D. D. YOUNG, T. S. PARRISH, J. H. SIMPSON, J. H. HILL, R. W. HUDSON, L. E. ALFORD, ANTONIO P. CAPITANO, SCOTT LESLIE, B. R. HUME AND P. Y. BRYAN, *Appellants*, v. F. A. HATHAWAY, CHAIRMAN AND MEMBER; E. P. GREEN, W. J. HILLMAN, J. HARVEY BAYLISS, I. E. SCHILLING, MEMBERS OF THE STATE ROAD DEPARTMENT OF THE STATE OF FLORIDA; J. C. LUNING, TREASURER OF THE STATE OF FLORIDA, ERNEST AMOS, COMPTROLLER OF THE STATE OF FLORIDA, AND H. L. CLARK & SONS, INC., *Appellees*.

En Banc.

Opinion Filed March 28, 1928.

Petition for Rehearing Denied April 13, 1928.

610

*Watson & Saussy,* for Appellants;

*Fred H. Davis,* Attorney General, *B. A. Meginniss* and *W. J. Oven,* for Appellees.

BUFORD, J.—Suit was filed by certain tax payers and citizens of the State of Florida seeking to enjoin the performance of a certain contract let by the State Road Department for the construction of a certain hard-surfaced highway in Levy County, Florida, from Bronson, in Levy County, to the Marion County line, approximately 15.01 miles, and being a part of the State Road No. 19, over which it was alleged that the State Road Department has supervision, control and construction authority. It was alleged that notice for bids had been advertised by the State Road Department and that the notice required bids for all work upon the road in question to be performed and done in accordance with certain plans and specifications referred to in the notice. The following allegation appears in the bill:

"Your orators allege and make specially a part of this bill the following, contained in said specifications, to-wit: On page 10 thereof, under Section 3, in paragraph 3.2, under title 'Award of Contract'; 'The award of the contract, if it be awarded, will be to the lowest responsible bidder whose proposal shall comply with all the requirements necessary to render it formal. The award, if made, will be within twenty days after the opening of the pro-

posals, but in no case will an award be made until the necessary investigations are made as to the responsibility of the bidder to whom it is proposed to award the contract.' And that part thereof on page 19 of said Specifications, etc., under Section 7 thereof, and page 7.11, heading of which is 'Responsibility for Damage, etc,' reading as follows: 'The contractor shall indemnify and save harmless the State, the party of the first part and all of its officers, agents, employes, from all suits, actions or claims of any character, name and description, brought for or on account of any injuries or damages received or sustained by any person or property by or from the said contractor, or by or in consequence of any neglect in safeguarding the work, or through the use of unacceptable materials in the construction of the improvements, or by or on account of any act or omission, neglect or misconduct of the said contractor, or by or on account of any claims or amounts recovered for any infringement of patent, trade-mark or copyright, or from any claims or amounts arising or recovered under the 'Workmen's Compensation Law' or of any other laws, by-laws, ordinance, order, or decree, and so much of the money due the said contractor under and by virtue of his contract as shall be considered necessary by the engineer may be retained for the use of the State, or in case no money is due his surety shall be held until said suit or suits, action or actions, claim or claims, for injuries or damages as aforesaid, shall have been settled and suitable evidence to that effect furnished to the engineer.

''The contractor guarantees the payment of all just claims for materials, supplies, labor and other just claims against him or any sub-contractor in connection with this contract and his bonds will not be released by final acceptance and payment by the party of the first part unless all such claims are paid or released.''

It is then alleged that pursuant to said notice, the following described bids were presented and opened:

The bid of L. B. McLeod Construction Company and L. M. Gray, one bidder, of Gainesville, Florida, amounting to $241,116.96;

The bid of C. A. Steed & Sons, of Okeechobee, Florida, amounting to $189,606.64;

The bid of Harwell Brothers, of Tampa, Florida, amounting to $229,725.92;

The bid of Cone Brothers Construction Company, of Tampa, Florida, amounting to $269,885.20;

The bid of Pryon Brown Construction Company, of Haines City, Florida, amounting to $262,965.32;

The bid of H. L. Clark & Sons, Incorporated, of Miami, Florida, amounting to $206,463.84; and

The bid of J. C. Johnson Construction Company, of Tampa, Florida, amounting to $181,091.76;
and that the contract referred to or the work to be done under contract was awarded to H. L. Clark & Sons, Inc., and that under such contract so awarded H. L. Clark & Sons, Inc., are prosecuting the work called for in the specifications. It is alleged in the bill that H. L. Clark & Sons, Inc., were not the lowest responsible bidders for the work, but that two other bids, to-wit: the bid of J. C. Johnson Construction Company was the lowest responsible bidder and that C. A. Steed & Sons were lower responsible bidders.

The complainants allege:

"That they believe, and charge the same accordingly, that in the making of such award for said work to the said H. L. Clark & Sons, Incorporated, the said State Road Department did not first determine the lowest responsible bidder proposing and bidding to do the work, and did not act in good faith to the tax payers of this State or to the contractors bidding therefor, but in disregard of their

legal duties and without regard to the lowest responsible bidder, made such award and let such contract upon some basis other than the competitive basis and 'lowest responsible' basis contemplated under the law by virtue of which said Board operates, thereby subjecting your orators, as tax payers as aforesaid, and other tax payers and citizens of the State of Florida, to an illegal, unjustifiable, unconscionable and unnecessary burden in the illegal use and disbursement of State funds and monies derived in part, from taxation.''

And further,

''That the contract for the said work as made and entered into as aforesaid between said Board and the said successful bidder in the specifications thereof heretofore incorporated in this bill under the head 'Responsibility for Damage,' requires the contractor to indemnify and save harmless the State, etc., from all suits, actions or claims of any character, name and description, brought for or on account of any injuries or damages received or sustained by any person, etc., by or from the said contractor or by or in consequence of unacceptable materials in the construction of the improvement, or by or on account of any act or omission, neglect or misconduct of said contractor, or by or on account of any claims or amounts recovered for any infringement of patent, trade-mark or copy-right, or from any claims or amounts arising or recovered under the 'Workmen's Compensation Law.' And your orators allege that the said State Road Department is not authorized, directly or indirectly, to burden itself, or the State, its citizens and tax payers with responsibility for such elements of damage as are thereby enumerated, or any of them, the same not being damages or liabilities, that could be chargeable to the State of Florida, or the said State Road Department thereof, under the conditions and in the

contract in which the same are described, nor in any of them. And your orators allege that such contract in the provisions aforesaid and each of them, or any of them, did indirectly undertake to cast such burden upon the said State of Florida, the citizens and tax payers thereof, and the said State Road Department thereof, since in the incorporation thereof in said contract, bidders for the work became advised in advance that they would be required to bear the cost of such possible contingencies in liability, thereby casting an unauthorized and illegal burden upon the tax payers to the extent of such increase as might be made in their bids sufficient to provide for the same and defeating the purpose of the law in having the contracts for such work awarded to the lowest responsible bidder.''

Separate answers were filed by J. C. Luning, State Treasurer; Ernest Amos, as Comptroller; H. L. Clark & Sons, Inc., and by the members of the State Road Department.

It will only be necessary to consider the answer of the State Road Department, Paragraphs Nos. 3, 5, 6, 7, 8, 9, 10 and 12 of said answer are as follows:

''3. For answer to the paragraph of said bill numbered 6, they admit the allegations thereof except the conclusion of law incorporated therein to the effect that the State Road Department is without power to reject any or all bids, and aver the fact to be that the power, admitted in the said bill of complaint to let a contract to the lowest responsible bidder necessarily includes the right to reject any or all bids save that of the bidder who is determined by said Department to be the lowest responsible bidder.

''5. Answering the paragraph of said bill numbered 8, these defendants admit the allegations thereof, and admit that said paragraph contains a true recital of excerpts from the said specifications, but not the whole of said specifica-

tions, all of which must be construed together to arrive at the true and proper meaning of the whole.

"6. Answering the paragraph numbered 9 of the bill of complaint, these defendants admit the allegations thereof, except that they aver that the bid of J. C. Johnston Construction Company of Tampa was not a regular bid and did not comply with all requirements necessary to render it formal, in this, that the said firm did not submit a bid for the construction of guard rail, item 65. That in and by the standard specifications upon which all bids received were based, it is provided that irregular proposals may be rejected; that a proposal which shows a substantial omission is such an irregular proposal, and these defendants aver that the omission of a bid on guard rail was a substantial omission.

"Further answering said paragraph of said bill, these defendants say that it is true that the award of the said contract was made to H. L. Clark & Sons Company, Incorporated, and contract for same duly entered into between said Clark & Sons Company and the State Road Department, and that said H. L. Clark & Sons Co., Inc., are now prosecuting the work contemplated by said contract. And they aver that the award of said contract to said H. L. Clark & Sons Company was pursuant to a determination by the Department that said firm was the lowest responsible bidder complying with all necessary requirements.

"7. Answering the paragraph of said bill of complaint numbered 10, these defendants say: That the award of contract to H. L. Clark & Sons Company was in fact an award to the bidder determined by the State Road Department to be the lowest responsible bidder, and was made on no other basis. That the J. C. Johnston Construction Company, whose bid was lower in dollars and cents than the bid of H. L. Clark & Sons was not deemed the lowest respon-

sible bid by the said Department, for the following reasons, that is to say: First, That the same was irregular and did not comply with all requirements necessary to make it a formal bid, as alleged in paragraph 6 of this answer. Second: That the Department, after a thorough and careful investigation · of the bidders, according to its usual custom, determined that the said J. C. Johnston Construction Company was not a responsible bidder for this project. Third: That a representative of the said J. C. Johnston Construction Company, prior to the actual award communicated to the Department information to the effect that he had figured its bid again, had concluded the same was pretty low and that if the Department desired to disregard said bid it was agreeable to said company. Fourth: That the Department did not consider the bid of J. C. Johnston Construction Company a responsible bid for the reason that said bid proposed to do the work for less than the amount which the Department's engineers, after careful study thereof, estimated the actual cost of same to be; that is to say, that the engineers of the Department estimated that the actual cost of laying the rock contemplated by said contract to be eigthy-six cents per square yard, whereas the said Johnston Company bid eigthy cents per square yard, which not only allows no profit but is less than actual cost figured. That the result of letting a contract to a bidder at a price less than actual cost is that very many claims from persons supplying labor, materials and supplies are filed, that the work is hampered and slowed down to a minimum of progress, and that almost invariably it is necessary to forfeit or annul the contract and call upon the contractor's surety to complete the work in order to get same finally finished, all of which tends to unnecessary delay and additional expense in the administration of the State's business. Fifth: That the Department, after a careful and thorough inves-

tigation, according to its custom, was not convinced that the said Johnston Company possessed the skill, judgment, equipment and experience necessary to the faithful and expeditious performance of the work contemplated.

"Further answering said paragraph, these defendants say: That the bid of C. A. Steed & Sons, which was also lower in actual dollars and cents than the bid of H. L. Clark & Sons, was rejected on this particular project for this reason: That the said firm bid the same day on another project and was awarded the contract for such other project. That the contract price bid on the latter project was upwards of $248,000, and while the Department regarded the said C. A. Steed & Sons as a responsible bidder for either project, it concluded and found from its investigations to determine the lowest responsible bidder, that it was not a responsible bidder for both projects. That on this latter project, award of contract on which was made to said C. A. Steed & Sons the said C. A. Steed & Sons was not the lowest bidder in dollars and cents, but that the lowest bidder in dollars and cents was one F. X. Bradley, who in turn was awarded another contract on the same day, his bid on Project 668, which was awarded to C. A. Steed & Sons, being rejected because the Department upon investigation found that he had no experience in hard-surfacing work, while he did have experience in grading, which comprised the work, contract for which was awarded to him the same day.

"Further answering said paragraph, these defendants say, in short, that the award of the contract to H. L. Clark & Sons Company, Incorporated, was made by the Department in good faith and in consequence of its determination, after careful and thorough examination of the bids and bidders, in the exercise of the discretion allowed it in

such matters, that said H. L. Clark & Sons Company, Inc., was the lowest responsible bidder thereon.

"8. Answering the paragraph of said bill numbered 11, these defendants say that it is true that the minutes of the State Road Department recite that award was made to the 'successful bidder,' but aver that the meaning of the word successful is, necessarily, the bidder whose bid successfully met all the requirements necessary to a valid award, or the 'lowest responsible bidder,' so determined by the Department in the exercise of its discretion therein. .

"9. Answering the paragraph numbered 12 of said bill of complaint, these defendants deny the allegations thereof, and aver the truth to be that the award was made, as hereinbefore alleged, to the lowest responsible bidder, and on no other basis.

"10. Answering the paragraph numbered 13 of said bill of complaint, these defendants say: That the said paragraph substantially recites the provisions of the specification in question, but these defendants aver that the said provision is a valid one, that it is a usual and customary provision in public contracts, and merely protects the rights of the State and does not cast upon said State or its tax payers any unauthorized or illegal burden.

"12. Answering the paragraph of said bill of complaint numbered 15, these defendants say: That it is not true that the contract between the State Road Department and H. L. Clark & Sons Company, Inc., is an invalid, null and void contractual obligation and agreement, either for the reason in said paragraph assigned or for any other reason, but that the same is a valid and existing contract.

"And the defendants deny that the tax payers are or have been damaged in any way by the award of the said contract to the said H. L. Clark & Sons Co., Inc. That the work has been and is being prosecuted by the said firm in

a manner satisfactory to the State Road Department, whereas, as hereinbefore alleged if the same had been let to a contractor at a price less than the cost thereof, the work could not have been done by such latter contractor promptly, expeditiously and satisfactorily, but would be subject to innumerable delays, claims and annoyances, and the result to be achieved, namely, the prompt and timely construction of the section of road in question would be defeated.''

To the answer general replications were filed.

An application was made for temporary injunction which came on to be heard after proper notice of the same.

Some testimony was taken before an examiner and affidavits and exhibits were filed before the chancellor. Argument was had and upon hearing the following order was made and entered by the chancellor:

''This cause came on to be heard upon the application of the complainants for a temporary restraining order, and upon the bill of complaint, the answers filed herein, affidavits and testimony and the arguments of counsel for the respective parties having been heard and the same having been duly considered by the court, it is hereby

''Ordered, adjudged and decreed that the said application be and the same is hereby denied, at complainants' costs.

''Ordered, adjudged and decreed at chambers, at Quincy, Florida, this 28th day of September, A. D. 1927.''

From this order, appeal was taken to this Court, with six (6) assignments of error, as follows:

''I. The statute under which the State Road Department acts in awarding road contracts is mandatory in its provisions.

''II. The evidence submitted to the court with the application for a temporary injunction, together with the

admissions of fact in the record, showed conclusively a failure on the part of the State Road Department to comply with the statute governing the awarding of the State road contract complained of in the bill of complaint herein.

"III. The answer of the State Road Department filed to the bill of complaint admits the awarding of the contract complained of in the bill of complaint in this suit to other than the lowest responsible bidder.

"IV. The court in denying the injunction applied for, overlooked the provisions of the contract complained of in the bill of complaint, which were attacked as being illegal and void, and erred in not declaring the contract, as an entirety, on account of such illegal provisions to be void and illegal.

"V. The record in the case, together with the evidence submitted at the hearing for the temporary injunction showed conclusively that the contract complained of in the bill of complaint was an illegal and *ultra vires* agreement.

"VI. The court erred in denying the application for a temporary injunction and restraining order in the face of the record and evidentiary showing made at the time of the application therefor of the illegality in the contract being complained of."

In considering the questions which are here presented we must bear in mind two principles that are well settled in this jurisdiction, as well as in all others where like procedure exists. The first is that the writ of injunction is an *extraordinary*, not an *ordinary*, every-day writ, and it should never be granted lightly but cautiously and sparingly and after notice to the opposite side. The writ of injunction is a highly beneficial writ but great care should be exercised in awarding it, lest it be turned into an instrument of oppression and injury. Godwin v. Phifer, 51 Fla. 441, 41 Sou. 597; Savage v. Parker, 53 Fla. 1002, 43

Sou. 507. And, second, both the granting and continuing of injunctions rest largely within the sound discretion of the trial court to be governed largely by the facts and circumstances of each particular case, and an abuse of such discretion must be made to appear to an appellate court to warrant it in disturbing the order of the chancellor in such cases. Building Supply Co. v. Acton, 56 Fla. 756, 47 Sou. 822; Holt v. Hillman Southerland Co., 56 Fla. 801, 47 Sou. 934; Vosen v. Willard, 60 Fla. 395, 53 Sou. 501; Pensacola v. Bear, 83 Fla. 484, 91 Sou. 360; Gracy v. Fielding, 83 Fla. 386, 91 Sou. 373; Farmers Bank & Trust Co. v. Palms Pub. Co., 86 Fla. 371, 98 Sou. 143; Nelson v. State, 84 Fla. 631, 94 Sou. 680.

As heretofore stated, the order appealed from was made on presentation of bill and answers and evidence produced in the form of testimony taken by an examiner and affidavits and exhibits. It will not serve any useful purpose to discuss the evidence at length because the chancellor has considered the evidence submitted and has rendered a decree based upon the bill, answer and evidence presented. The decree insofar as it must find support in the evidence is supported by the affidavit of the Chairman of the State Road Department, F. A. Hathaway, and is corroborated by the affidavit of J. L. Cresap and exhibits attached to the Hathaway affidavit. We, therefore, deem it sufficient for the purposes now to be served to quote the affidavit of Mr. Hathaway, which is as follows:

"On this 20th day of May, A. D. 1927, before me, a Notary Public in and for the State of Florida at large, personally appeared F. A. Hathaway, who being by me first duly sworn deposes and says:

"That he is Chairman and member of the State Road Department of the State of Florida; that as such Chairman and member, he is familiar with the facts and circum-

stances attending the awarding to H. L. Clark & Sons of the contract for the construction of Project 676-C, Road 19, Levy County. That said contract was awarded at a special meeting of the State Road Department held in the City of Jacksonville, Florida, on the 25th day of March, A. D. 1927, at which all the members of said Department were present and participating. That the award was made after an advertisement for bids for the said work had been made, and the said bids duly opened on the 22nd day of March, 1927, in the City of Tallahassee. That the award to the said H. L. Clark & Sons was made by the Department after investigation duly made it had duly and legally determined the said H. L. Clark & Sons to be the lowest responsible bidder on the said work, and that the said award was made in good faith by the said Department, to the said H. L. Clark & Sons who was then and there found and determined to be the lowest responsible bidder therefor.

"That there were, as alleged in the bill of complaint in the above entitled cause, two bids for the said work which were lower in dollars and cents than the bid submitted by the said H. L. Clark & Sons, to-wit, the bid of C. A. Steed & Sons, and the bid of J. C. Johnston Construction Company.

"That the bid of J. C. Johnston Construction Company was rejected by the Department for the following reasons, to-wit:

"1. That the said bid was irregular in that the bidder failed to bid on one of the items, to-wit, item 65, for the construction of guard rail, as will appear by reference to the bid of said company, a certified copy of which is hereto annexed, marked Exhibit 'A' and made a part hereof. That in and by Section 2.5 of the Standard Specifications upon which all bids received were based, a certified copy of which is hereto attached, marked Exhibit 'B,' it is pro-

vided that irregular proposals may be rejected and that a proposal which shows a substantial omission is such an irregular proposal. That the omission of a bid on guard rail was a substantial omission.

"2. That the Department, through its regular channels instituted its usual investigation of the bidders, and after such investigation determined that the said J. C. Johnston Company was not a responsible bidder for this project.

"3. That the Department further acted upon information conveyed to it in formal session by J. L. Cresap, State Highway Engineer of the State of Florida, to the effect that after his arrival in Jacksonville he had been approached by J. C. Johnston, connected with the firm of J. C. Johnston Company, and its representative in making said bid, that he, Johnston, had figured his bid again and had concluded that it was pretty low, and that if the Department desired to disregard his bid it was agreeable to him. That a minute was made of said information, certified transcript of which is hereto annexed marked Exhibit 'C,' and made a part hereof.

"4. That the Department did not consider the bid of J. C. Johnston Construction Company a responsible bid, for the reason that said bid proposed to do the work for less than the amount which the Department's engineers estimated the actual cost of same to be; that is to say, that the engineers of the Department estimated that the actual cost of laying the rock contemplated by said contract to be eighty-six cents per square yard, whereas said Johnston Company bid eighty cents per square yard, which not only allows no profit but is less than actual cost figured.

"5. That the Department, after its usual investigation, was not convinced that the said Johnston Company possessed the skill, judgment, equipment and experience necessary to the faithful performance of this contract.

"That the bid of C. A. Steed & Sons on this particular project was rejected for this reason: That the said firm bid the same day on another project and was awarded the contract for such other contract as appears by certified transcripts of the minutes of said Department hereto attached and marked Exhibit 'D.' That the contract price bid on the latter contract was upwards of $248,000.00, and while the Department regarded the said C. A. Steed & Sons as a responsible bidder for either project, it concluded and found from its investigation to determine the lowest responsible bidder that it was not a responsible bidder for both projects. That the tabulation of bids on the latter project, a certified copy of which is hereto attached and marked Exhibit 'E,' discloses that said C. A. Steed & Sons was not the lowest bidder in dollars and cents on the same, but that the lowest bidder in dollars and cents in that event was one F. X. Bradley, who in turn was awarded another contract on the same day, his bid on project 668 shown by said tabulation being rejected because the Department found that he had no experience in surfacing work, while he did have experience in grading which comprised the work, contract for which was let him the same day.

"That the award of all contracts herein referred to was made by the Department in good faith and in consequence of its determination of the lowest responsible bidder in each instance.

(Signed)                    F. A. HATHAWAY."

The assignments of error were presented in four groups; group one the first assignment; group two the second and third assignments; group three the fourth and fifth assignments and group four the sixth assignment. We may well admit that the proposition stated in the first assignment of error is correct, that is that the statute under which the State Road Department acts in awarding road contracts is

mandatory in its provisions and this is true, although it may be necessary to give judicial construction to those provisions.

The second and third assignments of error present to the Court the question of whether or not the complainants have shown that the contract complained of was awarded and let contrary to the statute in such cases made and provided. Section 1195, Revised General Statutes of Florida, provides, among other things:

"It shall be the duty of the State Road Department to prepare plans and specifications for all such proposed work, other than maintenance work of a regular or routine nature, and to advertise for bids on same at least once a week for not less than two consecutive weeks in some newspaper having a general circulation in the county where the proposed work is located; and the State Road Department may, at its discretion, award the proposed work to the lowest responsible bidder, or it may reject all bids and proceed to perform the work with convict labor or free labor, and may purchase such equipment and supplies as may be necessary for the efficient and economical prosecution of the work."

Section 3533, Revised General Statutes of Florida, as amended by Chapter 10035, Acts of 1925, provides, among other things:

"That, hereafter, any person or persons, entering into a formal contract with the State of Florida, any county of said State or any city of said State, or any political subdivision thereof, or other public authority, for the construction of any public building, or the prosecution and completion of any public work or for repairs upon any public building, or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obli-

gations that such contractor, or contractors, shall promptly make payment to all persons supplying him, or them, labor, material and supplies, used directly or indirectly by the said contractor, contractors, sub-contractor or sub-contractors in the prosecution of the work provided for in said contact.''

Under the second and third assignments of error it is contended by appellants that the State Road Department acted without authority in that the contract complained of was not let to the lowest responsible bidder. We agree with the apparent conclusion of the chancellor that the appellants failed as complainants in the court below to make this appear as a fact. We find no substantial evidence contradicting the affidavit of Mr. F. A. Hathaway, Chairman of the State Road Department, nor contradicting the allegations of the answer hereinbefore quoted, as to the manner and procedure in and under which the contract was awarded and let and it appears from both the allegations of the answer and the affidavit of Mr. Hathaway, which is corroborated by proof heretofore referred to, that the contract was let to the lowest responsible bidder under conditions as they then existed and we shall hereinafter cite authorities to support this theory of the case.

Certainly the legislature intended, and did vest in the State Road Department the power, authority and duty to determine not only from a standpoint of dollars and cents who should appear to be the lowest bidder, but also to determine from information available to and acquired by the State Road Department what bidder or bidders would be adjudged by the State Road Department to be responsible bidders for each particular contract sought to be awarded and from such responsible bidders for such particular contract to then determine the lowest of such responsible bidders, and in determining the responsiblity of the bidder

it became and was the duty of the Road Department to ascertain the degree of experience, the reputation for performance, the possession of facilities, the outstanding obligations, the obligations then assumed, or about to be assumed, the integrity and credit, as well as other matters which might touch and have influence upon the ability of each bidder to perform the contract for which he had placed a bid.

It is the contention of the appellants that when it was found by the State Road Department that J. C. Johnston Construction Company was not a responsible bidder for this particular contract, it became the duty of the State Road Department to reject all bids and readvertise for this work. We can not agree with this conclusion, because to do so would be illogical and would possibly and probably lead to the necessary failure of the State Road Department to perform the functions for which it was created. If this contention is sound then when the State Road Department readvertised for bids the same construction company could again present the lowest bid and although it had already been determined and should be again determined by the Department that such construction company was not a responsible bidder for that particular contract, it would become the duty of the State Road Department to again reject all bids and re-advertise, which procedure would be required to be repeated time and time again until such time as the State Road Department might determine that the lowest bidder was a responsible bidder or might determine to proceed to do the work contemplated with its own equipment and convict labor, thus hindering and delaying progress of the work of road construction throughout the State of Florida and causing the Department's utter failure to accomplish that development for which it was designed.

Mr. X may go to his banker today and apply for a loan

of $10,000.00. He may be entirely responsible for such an obligation and the bank, using good business discretion, may advance or loan him the $10,000.00 required, but it does not follow that Mr. X having been responsible for one $10,000.00 obligation, possesses such responsibility as will entitle him to a like loan tomorrow, and another of like size the day following. The statute unquestionably vested in the State Road Department the discretion to determine who are and who are not responsible bidders and in the exercise of this discretion the complainants in the court below, the appellants here, have not met the burden of showing that the discretion was exercised on a misconception of law or in ignorance, through lack of inquiry, or was the result of arbitrary will or improper influence or in violation of law.

In Hibbs *et al.* v. Arensberg *et al.*, Supreme Court of Pennsylvania, 119 Atlantic 727, the Court say:

"Ordinarily, courts will not interfere with the exercise of discretion of executive officers of school districts in performing their functions, but will intervene if it appears their *action* was based on misconception of law, or ignorance through lack of inquiry, or was the result of *arbitrary will* or caprice or improper influence or in *violation of law.*"

In Interstate Vitrified Brick & Paving Co. v. Philadelphia Mack Paving Co. *et al.*, 164 Pa. State Reports 477, on page 480, the Court say:

"The Act of 23d May, 1874, directing contracts to be awarded to the 'lowest responsible bidder,' has twice been before us for construction. In each it was held that the word 'responsible' as used in the Act applies not to pecuniary ability only, but also to judgment and skill. The duties thereby imposed on the city authorities are not merely ministerial, limited to ascertaining whose bid was the lowest,

and the pecuniary responsibility of the bidder and his sureties. The Act calls for the exercise of duties which are deliberative and discretionary.''

In Douglass v. Commonwealth, 108 Pa. State Reports 559, the Court say:

''In the Act of Assembly approved May 23d, 1874, (P. L. 233) directing contracts for supplies to be awarded to the lowest responsible bidder, the word 'responsible' does not refer to pecuniary ability only. The Act calls for an exercise of discretionary powers on the part of the city officers; and if they act in good faith, although erroneously or indiscreetly, mandamus will not lie to compel them to change their decision. They may be ordered by mandamus to proceed to do their duty of deciding and acting according to their best judgment, but the Court will not direct them in what manner to decide.''

In Williams v. City of Topeka, Supreme Court of Kansas, 118 Pac. 864, the Court say on page 866:

''A dishonest contractor may impose work upon the city, in spite of the utmost caution of the superintending engineer, apparently good, and even capable of bearing its duty for a time, which in the end may prove to be a total failure and worse than useless. Granted, that from such a contractor pecuniary damages may be recovered by an action at law, this is at best but a last resort that often produces more vexation than profit—a mere patch upon a bad job, an exceedingly meager compensation, at best, for the delay and incalculable damage resulting to a great city from the want of a competent supply of water. The city requires honest work, not lawsuits. While the contract in that case related to waterworks, the principle applies to street improvements, although the defects might not be so disastrous. We conclude that the word 'responsible' in the phrase 'lowest responsible bidder,' was used by the Legislature

in the sense in which it had long been interpreted by the courts and text-writers, and must be held to imply skill, judgment, and integrity necessary to the faithful performance of the contract, as well as sufficient financial resources and ability. Dillon on Mun. Cor., *supra;* State *ex rel.* Eaves v. Rickards, 16 Mont. 145, 40 Pac. 210, 28 L. R. A. 298, 50 Am. St. Rep. 476, and note.

"The next inquiry is how this responsiblity is to be determined. Here, again, the authorities speak with practically one voice. The governing body of the city—the mayor and council, or commissioners, as the case may be—must determine the fact, and such determination cannot be set aside, unless the action of the tribunal is arbitrary, oppressive or fraudulent. High, Ex. Legal Rem., Sec. 92; State *ex rel.* v. McGrath, 91 Mo. 386, 3 S. W. 846; Douglass v. Commonwealth 108 Pa. 559; Madison v. Harbor Board of Baltimore City *et al.,* 76 Md. 395, 25 Atl. 337; Meffert v. Medical Board, 66 Kan. 710, 72 Pac. 247, 1 L. R. A. (N. S.) 811; Denver v. Humphrey, 68 Kan. 759, 75 Pac. 1037. The determination of the question who is the lowest responsible bidder does not rest in the exercise of an arbitrary and unlimited discretion, but upon a *bona fide* judgment, based upon facts tending to support the determination. McGovern v. Board of Public Works, 57 N. J. Law 580, 31 Atl. 613; Bunker v. Hutchinson, 74 Kan. 651, 87 Pac. 884; 2 Dillon, Mun. Cor. 811. The statute will not be so interpreted as to afford a cover for favoritism. The city authorities are required to act fairly and honestly, upon reasonable information, but when they have so acted their decision cannot be overthrown by the court. 'The duty of examining the proposals, determining the responsibility, and awarding the contract is judicial in its nature and character, and the awarding the contract is a judi-

cial act, which is not within the province of the courts to control by mandamus or mandatory injunction.' ''

In Missouri in the case of State ex rel. State Journal Co. v. McGrath, 3 S. W. 846, the same principles are enunciated. See also High's Extraordinary Legal Remedies, 3rd Ed., Sec. 3, page 102, in which the writer says:

"And when a board of commissioners for the erection of a public building are required by law to let the contract to the lowest responsible bidder, they are regarded as vested with powers partaking of a judicial nature in determining the responsibility of bidders. If, therefore, they have acted in good faith and have accepted a bid which they regard as that of the lowest responsible bidder, they cannot be compelled by mandamus to let the contract to a lower bidder. The duties of such commissioners being judicial rather than ministerial, their action, when had in good faith and in the absence of fraud, will not be controlled by the courts. In all such cases, the spirit rather than the strict letter of the law requiring the work to be let to the lowest bidder should be kept in view."

See also, Madison v. Harbor Board of Baltimore City, 25 Atl. 337; Denver v. Humphrey, 75 Pac. 1037; State v. Board of Public Works of City of Trenton, 31 Atl. 613; Dillon on Municipal Corporations, 5th Ed. Vol. 2, Sec. 811; And so it appears that assignments of error Nos. 2 and 3 are without merit.

Assignments of error Nos. 4 and 5 are addressed to the requirements constituting a part of the specifications and particularly that provision contained in Sec. 7, paragraph No. 7.11 heretofore quoted from the bill of complaint in this opinion. Our view is that the stipulations in the specifications complained of place no greater burden on the proposed contractor than those which would legally rest upon him without such provisions appearing in the specifica-

tions, or appearing in his contract, and that it is proper to place such provisions in a contract and specifications for public work so that there may be no question between the parties as to where the liability and responsibility lies. These provisions are generally known to be the usual provisions contained in construction contracts and there is no showing whatsoever contained in the record that the inclusion of these provisions placed any burden on the contractor beyond that which would have rested upon him, had no such provisions been contained therein.

The 6th assignment of error is practically a re-statement of the former five objections.

We find no error in the order appealed from and the same should be and is hereby affirmed.

Affirmed.

ELLIS, C. J., AND WHITFIELD, TERRELL, STRUM AND BROWN, J. J., concur.