47 So.2d 533 (1950)
CITY OF PENSACOLA et al.
v.
KIRBY.
Supreme Court of Florida, Division B.
July 18, 1950.
F. Churchill Mellen and Coe & Eggart, all of Pensacola, for appellants.
Yonge, Beggs & Lane, Pensacola, for appellee.
SEBRING, Justice.
The City of Pensacola has appealed from an adverse decree rendered in a suit brought by the appellee, a taxpayer of the city, to enjoin the execution of a contract between the city and one Gene Gevaldo for the maintenance of its parking meters.
The charter of the City of Pensacola provides: "Contract For Public Work.  Any *534 public work or improvement may be executed either by contract, or by direct labor, as may be determined by the council. * * * Contracts for all such work or improvement of an estimated cost of one thousand dollars ($1000.00) or more shall be awarded to the lowest responsible bidder, and all contracts that may be awarded for any estimated value in excess of three hundred dollars shall be similarly awarded, in both cases, after public advertisement and competition as may be prescribed by ordinance; the city manager shall have power to reject all bids and advertise again. All advertisements as to contracts shall contain a reservation of the foregoing rights. Contracts for public work shall be signed by the city manager after approval thereof by the council." See Section 40, Chapter 15425, Special Acts, 1931.
In keeping with this charter requirement the City of Pensacola published in two separate issues of the Pensacola Journal an advertisement calling for sealed bids for "maintaining and collecting from parking meters [in the City of Pensacola] for two years beginning 1 January 1950." Eight bids were received pursuant to the notice. These varied from a low bid of 50¢ per month per meter to a high bid of 70¢ per month per meter. When the bids were in, the city manager interviewed the two lowest bidders and from the information gained came to the conclusion that A.J. Kirby, the appellee, was a "responsible bidder." He thereupon recommended to the city council that the contract be awarded to Kirby as the "best qualified" of the persons who had submitted bids. The city council disregarded the recommendation of the city manager and voted to give the contract to one Gene Gevaldo, the highest of the eight bidders. Kirby then instituted the present suit to restrain the council from awarding the contract to Gevaldo. An answer was filed to the bill and testimony was taken on the issues. At final hearing the chancellor entered a decree awarding Kirby the relief sought in his bill, and this appeal has been taken from that ruling.
It is first contended by the appellants as a ground for the reversal of the decree that inasmuch as section 40 of the City charter requires that contracts may be let by the City only after such "public advertisement and competition as may be prescribed by ordinance" the decree must be set aside, because the plaintiff has failed to plead and prove either that such an ordinance existed or that the contract proposed to be awarded to Gevaldo was violative of its terms.
The point suggested by the appellants was not made an issue in the court below and hence will not be considered here; the function of an appellate court being to review matters previously considered and ruled on by the lower court, not questions presented in this Court for the first time.
It is next contended by the appellants that the provisions of section 40 of the charter with respect to awarding contracts are meant to apply only to contracts for the construction of public works and improvements such as, for example, sewers, light and water plants, streets, sidewalks, and the like, and that the letting of a contract similar to the one here involved is not governed by the statute.
So far as we have been able to ascertain, section 40 is the only section in the charter that attempts to deal in anywise with the letting of contracts by the city. It provides, first, that all contracts for public works or improvements of an estimated cost of $1000 or more must be awarded to the lowest responsible bidder. It provides, secondly, that "all contracts that may be awarded for any estimated value in excess of three hundred dollars shall be similarly awarded." It provides, thirdly, that "in both cases" the award shall be made only "after public advertisement and competition." Thus the section recognizes a clear distinction between contracts for public works and improvements of an estimated cost of $1000 or more, on the one hand, and contracts not for public works and improvements of an estimated value in excess of $300, on the other; and the section provides the method by which contracts falling into either class must be awarded; namely, to the lowest responsible bidder after public notice and competition.
It is also contended by the appellants that the contract in question is one *535 calling for personal services involving peculiar skill and ability and that consequently the contract does not come within the class of contracts which the section of the charter contemplates shall be awarded upon competitive bidding. See McQuillin, Municipal Corporations, 3d Ed., Vol. 10, Section 29.35, p. 281.
The specifications which were made the basis for letting the contract state that "The person bidding on this work shall be qualified by experience in the maintenance and repair of Parking Meters and/or clocks and shall submit proof of such experience. * * * The contractor on this work shall be answerable to and under the supervision of the Chief of Police. He shall collect all monies from the meters at least once a week and more often if found necessary and shall take all money to the office of the City Clerk-Comptroller where he will sort, count and wrap all money collected. He shall make regular and frequent inspections of the meters to keep them in proper operating condition. He shall make calls at the request of the Police Department to correct faulty meter operation. He shall call the Police Department at 10:00 A.M., 12:00 M., 2:00 P.M. and 4:00 P.M. daily for receipts of reports of stopped meters and other instructions." It does not seem to us that these specifications call for such technical experience and skill as to take the contract in question without the provisions of section 40 of the charter requiring that contracts be let on competitive bids; and apparently the members of the city council did not so view the specifications. For the record shows that on a previous occasion Gevaldo, the high bidder with respect to the contract involved in the litigation, had been given a contract for maintaining and servicing the parking meters and that he had not had previous experience when he was awarded that contract; that during the term of the contract he had become disabled on account of illness and that for more than a year the principal part of the work was done by inexperienced assistants hired by Gevaldo. The city manager testified with respect to qualifications that "the works of a parking meter are not too complicated to rapidly learn;" and the watchmaker who assisted the city manager in examining the two low bidders, one of whom was the appellee, Kirby, testified: "It is nothing complicated about one of those things. The main thing you have to go out and get them and clean them up and put them back out. You can't be a lazy man and do it. It doesn't take much ability to do that." From the record, we conclude that the contract in question was not one requiring the performance of personal services of peculiar skill and ability. It therefore came within the requirement that it should be let to the lowest responsible bidder after competitive bidding.
The final contention of the appellants is with respect to the authority of the city council to award the contract to Gevaldo, the highest bidder, in the face of the charter requirements that the bid be awarded to "the lowest responsible bidder."
As we read the record it reveals that no real consideration was given by the members of the city council as to the qualifications of the various persons who submitted bids for contract. The council made no findings that persons submitting bids lower than the bid submitted by Gevaldo were so lacking in the experience necessary to perform the contract that their bids should be rejected. In the face of the charter provision requiring that the contract be awarded to "the lowest responsible bidder" the council ignored the lower bids and voted to award the contract to Gevaldo, the high bidder, not because of the fact that the lower bidders were not qualified but largely in recognition of the fact that Gevaldo's services in performing his previous contract with the City had been satisfactory.
While the law imposes no mandatory obligation upon a public agency in respect to the letting of competitive contracts that will require the agency in every case to consider the lowest dollars and cents bid as being "the lowest responsible bid" to the exclusion of all other pertinent factors that may be taken into consideration, the law does require that where discretion is vested in a public agency with respect to letting public contracts on a competitive basis, the discretion may not be exercised arbitrarily *536 or capriciously but must be based upon facts reasonably tending to support the conclusions reached by such agency. See Culpepper v. Moore, Fla., 40 So.2d 366; Willis v. Hathaway, 95 Fla. 608, 117 So. 89. The record reveals that the discretion exercised by the city council did not rest upon material facts reasonably tending to support the conclusions reached by such agency.
It follows that the decree appealed from should be affirmed.
It is so ordered.
ADAMS, C.J., and CHAPMAN and HOBSON, JJ., concur.