Suit by Jack Culpepper, as citizen and taxpayer of school district, against Walter T. Moore, Jr., and others, as and constituting the members of the Board of Public Instruction of Leon County, Fla., and A.D. Albritton, operating and doing business under the firm name and style of Albritton-Williams, to have contract between the board and A.D. Albritton for construction of public school building declared invalid, for an accounting from board for moneys paid on contract, and for decree enjoining board from making further payments thereunder. From an adverse decree, the plaintiff appeals.
Decree affirmed.
The appeal is from a final decree in favor of the defendants below.
The appellant Culpepper, a general building contractor, was the lowest "dollars-and-cents" bidder at the letting of a contract for the construction of a public school building in Leon County, Florida. After considering all bids submitted, the County Board of Public Instruction rejected the bid submitted by Culpepper and awarded the contract to one A.D. Albritton, the next lowest bidder, whom the Board found to be the "lowest responsible bidder." Albritton began work under his contract and thereafter Culpepper, in the capacity of a citizen and taxpayer of the school district in which the building was being erected, instituted a suit in equity against the members of the Board and Albritton for the purpose of having the contract between the defendants declared invalid, for an accounting from the Board for moneys paid on the contract, and for a decree enjoining the Board from making further payments thereunder.
The amended bill upon which the parties went to trial charged, in substance, that in considering the bids submitted by various contractors the Board had "ignored" the low bid submitted by Culpepper, because of a "vindictive desire to satisfy some pique, peeve or personal spite with and toward" Culpepper; that the Board had announced as the reason for awarding the contract to Albritton that he had agreed to construct the building in a shorter time than that agreed by Culpepper but that the reason given was "a mere pretext or excuse without foundation in law or in fact, and in reckless disregard of the public interest;" that the finding of the Board that Albritton was the "lowest responsible bidder" was contrary to law; and that the award of the contract to Albritton was such an arbitrary and unreasonable abuse of the discretion vested in the Board in respect to such matters as to render the contract nugatory.
On the day fixed for taking testimony before the chancellor the plaintiff amended his amended bill of complaint by alleging that in awarding the contract to Albritton instead of to Culpepper, the Board had improperly considered "as a major and influencing factor" the fact that Albritton had offered to complete the contract in a lesser time than that agreed by Culpepper, but that the "time factor" was not a proper element for consideration in awarding the contract, because of the fact that at the time notice was published of invitations to contractors to bid on the project the plaintiff "was not advised, either by the terms of said invitation for bids or by anyone in authority acting for the defendants School Board, that any preferential consideration would be given to the contractor who would propose and agree to construct said school building under the terms of said contract in a shorter period of time than that required by the invitation for bids; a period of twelve months from the date of the execution of the contract." *Page 368 
The defendants filed answers denying the material allegations of the amended bill as amended at the hearing, and evidence was submitted on the issues. At final hearing the chancellor found that the evidence wholly failed to sustain the allegations of the bill with respect to bad faith or improper or illegal motives on the part of the Board; that the Board had acted within its authority and discretion in adjudging Albritton to be the "lowest responsible bidder;" that though the Board had considered the proposed time of completion of the project as an important factor in determining the "lowest responsible bidder" it had not abused its discretion in doing so, in view of the pressing need for an early completion of the building and the fact that the bid forms submitted to contractors on which to make their proposals for contract gave notice on their face that the time element was to be considered as a competitive factor. Based upon these findings the chancellor entered a decree dismissing the bill of complaint.
The first contention made by the appellant on the appeal is that there was no substantial evidence before the Board at the time the contract was let, upon which the Board in the exercise of a lawful and sound discretion could have reached the conclusion that Albritton was the "lowest responsible bidder."
We cannot agree with the appellant in this particular. The hearings in the case were conducted before the chancellor. It was his duty and province to reconcile the conflicts in the evidence and to base his decree upon the evidence he found to be true. There was evidence presented to him that the Board of Public Instruction of Leon County had funds on hand derived from a bond issue, for the purpose of constructing public school buildings in Leon County. The Board advertised for bids to be received on April 28, 1948, for the construction of two schools, one to be known as South City Elementary School (the school involved in this litigation) and the other to be known as Bond Elementary School. The published notice for bid provided "Work shall be commenced within 30 days after contract is executed and shall be completed within 12 months from that date," and also "all work shall be done in accordance with contract, plans, specifications and special provisions provided by the owner. Contract, plans, etc., may be examined at the office of the Board of Public Instruction, Leon County, Florida, at the County Court House, Tallahassee, Florida."
Among the contract documents provided for use in connection with the letting were forms for contractors to use in making bids; the one to be used in connection with the South City Elementary School being worded as follows:
"The undersigned bidder has carefully examined the form of contract, the general conditions, the specifications, the special conditions and the drawings for the construction of South City Elementary School, dated March 20, 1948, and also the site of the work, and will provide all necessary machinery, tools, apparatus, and other means of construction and do all the work and furnish all material called for by said specifications, general conditions, special conditions and drawings in the manner prescribed therein in said contract, and in accordance with the requirements of the Architect for the sum of $ ____.
"Certified check in the amount of $ ____ is enclosed.
"We propose to start the work within ____ days after contract is executed, and to finish the work in ____ days.
____________" Signed
When the sealed bids were opened at the letting on April 28, 1948, Culpepper was found to have submitted the low dollars and cents bid on each of the buildings and accordingly was awarded the contract as to each building.
A few days after the letting the Board executed a contract with Culpepper for the construction of the Bond Elementary School and Culpepper commenced work on the project. As to the South City Elementary School, however, Culpepper advised the Board a few days after notice that he had been awarded the contract that he had made a $10,000 error in calculating the cost of certain materials and hence would not execute a contract or construct the building *Page 369 
in accordance with the bid he had submitted. After this notification by Culpepper the Board declared his $2,000 good faith check forfeited and re-advertised for new bids on the South City School. This action of the Board was taken over the protest of Albritton, the next lowest bidder, who contended that upon the failure of Culpepper to execute a contract at the price submitted in his bid, he, Albritton, was entitled to be awarded the contract.
At the second letting on May 6, 1948, Culpepper was again the low "dollars and cents" bidder and Albritton was next lowest. In his form of bid Culpepper specified a price of $208,512.18 (a sum approximately $14,000 in excess of the original bid,) a time of 30 days within which he would begin the work, and a time of 360 days within which he would complete the project. Albritton bid the sum of $217,312. (the same price he had bid on the first letting), a time of 10 days within which he would begin the work, and a time of 240 days within which he would complete the project. After a consideration of the bids submitted, the Board awarded the contract to Albritton, upon a finding that he was the "lowest responsible bidder" for the project.
The testimony of the members of the Board was that in arriving at the conclusion that Albritton was the lowest responsible bidder, the Board considered the following facts and factors: (1) The advantage and savings that would flow to the Leon County School System from a completion of the project on a date earlier than the 12-month maximum time stated in the publication for bids; (2) that the Bond Elementary School then being constructed by Culpepper was close to, if not the largest, single unit he had ever contracted to build; (3) that the architect for the Board had advised that it would be advantageous because of these facts to have a different contractor for the South City School; (4) that as to the Bond Elementary School Culpepper had requested several contract changes relating to substitution of materials different from those specified; (5) that Culpepper had refused to execute a contract on the South City School based on his first bid; (6) that on the second proposal made by Culpepper he did not bid specifically on certain additional construction which was decided upon subsequent to the first letting and before the contract was finally let, although such additions were included in the specifications on file in the office of the Board and available to the bidder; (7) that the architect for the Board had advised that Culpepper's conduct in connection with his bid indicated "irresponsibility," in that he had made an original error of $10,000; had then refused to execute a contract pursuant to his original bid; had upped his bid at the second letting to include an amount in excess of the $10,000 error, after having gained information with respect to the bids made by competing contractors on the original bidding, by including an amount equal to the good faith check which he had forfeited by refusing to enter into the contract at the first letting, and by an additional $2,000 for plumbing installation and fixtures; and that he had failed to examine amended plans and specifications for additional construction or bid on such additional construction, although all other contracts at the second letting did bid on such additional construction.
Upon this evidence which the chancellor saw fit to believe, the question is whether the chancellor committed reversible error in entering the decree appealed from.
The statute governing the award of contracts for public school construction provides that, "As soon as practicable after any bond issue has been voted upon and authorized or funds have been made available for the construction, repair, alteration, or otherwise for the improvement of any school building; and after plans for the work have been approved by the state superintendent, the county board, after advertising the same in the manner prescribed by law, shall award the contract for such building or improvements to the lowest responsible bidder therefor; provided, that the county board may within its discretion reject any and all bids received if it deems the same expedient, and may re-advertise calling for new bids. * * *" Sec. 235.31, Florida Statutes 1941, F.S.A.
A statute similar in content, but pertaining to the duties of the State Road Department *Page 370 
in letting contracts for state road construction, was before this court in Willis v. Hathaway, 95 Fla. 608, 117 So. 89, 94, and in that case this court held: "Certainly, the Legislature intended and did vest in the state road department the power, authority, and duty to determine not only from a standpoint of dollars and cents who should appear to be the lowest bidder, but also to determine from information available to and acquired by the state road department what bidder or bidders would be adjudged by the state road department to be responsible bidders for each particular contract sought to be awarded, and from such responsible bidders for such particular contract to then determine the lowest of such responsible bidders, and in determining the responsibility of the bidder it became and was the duty of the road department to ascertain the degree of experience, the reputation for performance, the possession of facilities, the outstanding obligations, the obligations then assumed or about to be assumed, the integrity and credit, as well as other matters which might touch and have influence upon the ability of each bidder to perform the contract for which he had placed a bid." See also DuBoise Construction Co. v. City of South Miami, 108, Fla. 362, 146 So. 833.
That decision makes it plain that while the discretion vested in a public agency in respect to letting public contracts may not be exercised arbitrarily or capriciously, but that its judgments must be bottomed upon facts reasonably tending to support its conclusions, no mandatory obligation is imposed upon such an agency to consider the lowest dollars and cents bid as being the "lowest responsible bid" in every case, to the exclusion of all other pertinent factors which may well support a reasonable decision to award the contract to a contractor filing a higher bid. So long as such a public agency acts in good faith, even though they may reach a conclusion on facts upon which reasonable men may differ, the courts will not generally interfere with their judgment, even though the decision reached may appear to some persons to be erroneous.
Judged by the principles enunciated in Willis v. Hathaway, we find ourselves unable to say that the chancellor erred in holding that the Board did not abuse its discretion in determining that Albritton was the "lowest responsible bidder."
The only other question for decision is whether the Board transcended its authority in considering the "time element" of construction as a competitive factor in determining the "lowest responsible bidder." It is argued by the appellant that inasmuch as no notice was given any bidder either that time of construction would be considered as a competitive factor in determining the "lowest responsible bidder" or that preferential consideration would be given to the bidder who would propose to construct the building in the shortest period of time, this factor was one which the Board could not lawfully take into consideration in awarding the contract.
We are unable to agree with this contention. It is true, as pointed out by the appellant, that there was no express statement in the published advertisement for bids, or in the bid forms supplied to the contractors for bidding, that time of completion of the project was a competitive factor or would be so regarded. It is true, also, that the appellant was never advised personally by the Board or its architect that the time element would be considered a competitive factor. But it appears to the court, as found by the chancellor, that the bid forms constituted sufficient notice within themselves that the time element was to be a competitive factor. In addition to the wording of the bid forms there was testimony of witnesses skilled in the construction business that the documents used were such as to put bidders on notice that time would be a competitive factor, according to usual practices and procedures in the building trades. Moreover, there was proof that the appellant, in his capacity as a contractor, thought the time element sufficiently important, as did also several of the other competing contractors, to propose in the bid form submitted at the first letting to complete the project in a time less than the maximum twelve months period referred *Page 371 
to in the published notice for bids. These facts impelled the chancellor to hold that in considering the time element as a competitive factor the Board did not abuse its discretion; and we think that there was sufficient evidence in the record to support this finding.
The appellant having failed to show error, the decree appealed from should be affirmed.
It is so ordered.
ADAMS, C.J., and HOBSON, J., concur.