383 So.2d 662 (1980)
MARRIOTT CORPORATION, a Delaware Corporation, Appellant,
v.
METROPOLITAN DADE COUNTY, Etc., et al., Appellees.
No. 79-1365.
District Court of Appeal of Florida, Third District.
April 15, 1980.
Rehearing Denied June 4, 1980.
*663 Taylor, Brion, Buker & Greene and R. Bruce Wallace, Jr., Miami, for appellant.
Robert Ginsburg, County Atty. and William W. Gibbs, Asst. County Atty., Shutts & Bowen and Eric B. Meyers, Miami, for appellees.
Before BARKDULL, SCHWARTZ and BASKIN, JJ.
BASKIN, Judge.
This appeal challenges a final declaratory judgment approving an award by the Dade County Board of County Commissioners of a contract to operate a bar at the Miami International Airport to Jerry's, Inc. instead of to the Marriott Corporation. This court must decide whether the trial court committed error in approving the award to Jerry's on the ground that it was a local firm, when Marriott's bid returned a higher percentage of the gross revenues to Dade County. We find the trial court erred and reverse.
*664 In 1978, Dade County published an invitation for proposals for competitive bids under an "Operational and Management Services Agreement" to sell alcoholic beverages in the new International Satellite facility at the Miami International Airport. The invitation was advertised pursuant to Section 125.012(17), Florida Statutes (1977) and Section 125.35, Florida Statutes (1977). Each bidder was required to post a guarantee deposit or bid bond in the amount of $25,000 at the time of submitting its proposal.
Compensation to the successful bidder was to be in the form of gross revenues retained from the sale of alcoholic beverages. The successful bidder was to retain 75% of the first $42,000 of monthly gross revenues and to retain the percentage of the monthly gross revenues in excess of $42,000 proposed by the bidder. The successful bid would be the lowest percentage of gross revenues in excess of $42,000 per month to be retained by the concessionaire. There was to be no competitive bidding on the first $42,000 of gross revenues per month, of which all bidders would retain 75% while remitting the remaining 25% to the county. The successful bidder would be responsible for maintenance repair and cleanliness of the third floor bar area and required to provide drinks and snacks to the third floor bar patrons as well as to employ those persons necessary to serve drinks and snacks and manage the bar. The proposed management services agreement was for a fixed term of three years commencing after the people-mover connecting the International Satellite Terminal becomes operational. The agreement was to be renewable at Dade County's option for an additional seven years, subject to Dade County's right to negotiate the modification of compensation.
Instructions to proposers also provided that the parties would be evaluated with respect to:
1. The net profit payment to County as contained in the Proposal Form [the percentage bid];
2. Depth of management, including training schools and programs for management;
3. Experience at other local, state and national locations and ability to provide experienced personnel capable of servicing international travelers;
4. Marketing and consumer research programs;
5. Prior experience in sales outlets of the kind anticipated herein;
6. Number of outlets and their most recent available average gross revenues, separately stated for the outlets for Dade County, the State of Florida, the United States, Central and South America and the Caribbean and Europe;
7. Other factors which will best serve the highest public interest.
Marriott's bid proposed to retain 40% of the gross revenues generated by the franchise in excess of $42,000 per month and to remit to the county 60% of the gross revenues in excess of $42,000 per month. Jerry's bid proposed to retain 50% of the gross revenues in excess of $42,000 per month and to remit 50% to the county. A selection committee interviewed both bidders and recommended that Marriott be awarded the contract. The committee determined that both Marriott and Jerry's were "equally qualified to provide the services of the types and caliber required in this unique facility." The committee letter went on to state: "Since the Marriott Corporation submitted a higher numerical value, the Committee recommends award of the agreement to the Marriott Corporation. It should be pointed out that there is some question as to whether such numerical difference would come into effect during the fixed term of the Agreement."
The county manager recommended that Marriott be awarded the agreement. He stated in his memorandum to the Board of County Commissioners:
Regarding the Alcoholic Beverages Services Agreement, the Committee felt that both Marriott and Jerry's were equally qualified to provide the services desired with a high level of quality. Therefore, the Committee recommended Marriott solely on the basis of the lesser percentage *665 of gross revenues to be retained by them, in the event gross revenues exceed $504,000 per year. It is very doubtful that this factor will come into effect during the fixed term of the Concession Agreement.
The Aviation Director and this office concur in the Committee recommendation, however, if the Board of County Commissioners were to select Jerry's, Inc. it would be equally acceptable.
At a meeting of the Board of County Commissioners, the agenda item was brought up by a member of the Board as follows:
On 6(b)(10), I understand from looking at this that we have two companies that bid it and reading that the difference in the bid is something that probably won't ever come about; that what made one bidder lower was a better percentage on a figure that will probably never be obtained and the other firm that bid it is a local firm, and I'd like ... if there's no objections, I'd like to move that that be awarded to Jerry's."
The motion was passed.
Marriott protested the award to Jerry's and requested the Commission to reverse its decision. It declined to do so and awarded the agreement to Jerry's, Inc. Marriott filed an action for declaratory judgment and other relief. The trial court found that Marriott's projections were based upon erroneous assumptions and that Marriott had failed to sustain its burden of proof that Dade County acted arbitrarily with respect to the award of the contract.
We disagree with the trial court's conclusion that the Board of Commissioners acted within its lawful authority and discretion. We hold that the award to Jerry's, Inc. constituted an abuse of discretion.
The parties have addressed two issues concerning the award of the contract; first, whether the county was obligated to follow competitive bidding standards requiring the award to be made to the lowest or best bidder, and second, whether the award to Jerry's was within the discretion of the Board, taking into consideration that Marriott's bid returned a higher percentage of gross revenues to Dade County.

1. Competitive Bidding.
Competitive bidding generally encompasses the submission of bids to complete a project and the award of the contract to the responsible bidder best able to complete the project in the manner financially most advantageous to the community. Robert G. Lassiter & Co. v. Taylor, 99 Fla. 819, 128 So. 14 (1930).
The purpose of competitive bidding has been stated in Hotel China & Glassware Co. v. Board of Public Instruction, 130 So.2d 78, 81 (Fla. 1st DCA 1961), as follows:
Competitive bidding statutes are enacted for the protection of the public. They create a system by which goods or services required by public authorities may be acquired at the lowest possible cost. The system confers upon both the contractor and the public authority reciprocal benefits, and exacts from each of them reciprocal obligations. The bidder is assured fair consideration of his offer, and is guaranteed the contract if his is the lowest and best bid received. The principal benefit flowing to the public authority is the opportunity of purchasing the goods and services required by it at the best price obtainable. Under this system, the public authority may not arbitrarily or capriciously discriminate between bidders, or make the award on the basis of personal preference. (emphasis added) (footnote omitted)
Competitive bidding statutes should be construed to advance their purpose and to avoid their being circumvented. Wester v. Belote, 103 Fla. 976, 138 So. 721 (1931).
A public body is not required unqualifiedly to award the contract to the lowest bidder unless there exists a statutory requirement. William A. Berbusse, Jr., Inc. v. North Broward Hospital District, 117 So.2d 550 (Fla. 2d DCA 1960).
Dade County has authorized competitive bidding by resolutions expressing its policy. Dade County, Fla., Resolution *666 1586-72 (Oct. 19, 1972) provides that "whenever goods or services are to be obtained for or on behalf of the Dade County Port Authority, the competitive bidding process is to be used whenever possible." A second resolution, set out in part below, specifies the procedure to be followed:
Whereas it is the consensus of this Board that it is to the best interest of the public that all franchises and concessions of a non-aeronautical nature, in, on, or in connection with any county airport facility or project, whether exclusive or nonexclusive, should be granted only after receipt of publicly solicited sealed, competitive bids in the manner prescribed by law and to that bidder whose bid will result in the greatest financial benefit to the Port Authority.
Now, therefore, be it resolved by the Board of County Commissioners of Dade County, Florida, acting as the Dade County Port Authority, that it is the policy of this Board that no franchise, whether exclusive or non-exclusive, for the operation of any non-aeronautical concession in, on, or in connection with any airport facility or project owned and operated by Dade County shall be granted unless sealed, competitive bids have been received therefor in the manner provided by law, and the award of such franchise shall be to that bidder whose bid, when accepted, will result in the greatest financial benefit to the Port Authority.
Dade County, Fla., Resolution 1587-72 (Oct. 19, 1972). These resolutions require the Board to submit the management and services contract under review to the competitive bidding process.
Appellees argue that a resolution is merely "temporary and ministerial in character" and cannot authorize competitive bidding. We disagree. Appellees have described only the nature and degree of formality of a resolution. A resolution is "an expression of a governing body concerning matters of administration, an expression of a temporary character, or a provision for the disposition of a particular item of the administrative business of the governing body." § 166.041(1)(b), Fla. Stat. (1977).
A public body, however, "may, as incident to [its] general powers, transact business of a ministerial or temporary character by resolution." City of Pensacola v. Southern Bell Telephone Co., 49 Fla. 161, 37 So. 820, 824 (1905); Certain Lots Upon Which Taxes Are Delinquent v. Town of Monticello, 159 Fla. 134, 31 So.2d 905 (1947).
To a large extent, the language of the charter of the municipality or, as in this case, the county, determines what action may be taken by resolution and what must be done by ordinance. The Dade County, Florida, Charter § 1.02(A) provides:
The Board shall ... decide which actions of the Board shall be by ordinance or resolution, ... except that any action ... which provides for raising revenue, appropriating funds, or incurring indebtedness, or which provides a penalty or establishes a rule or regulations for the violation of which a penalty is imposed shall be by ordinance.
This charter section is implemented by the county code which allows the Board to perform any function (except those specifically set aside by the charter) by either a resolution or an ordinance. Dade County, Fla., Code § 1.21(d).
The broad language of the pertinent charter and code sections makes a resolution sufficient authorization for competitive bidding in this case. Accord, Ramsey v. City of Kissimmee, 139 Fla. 107, 190 So. 474 (1939) (noting that a contract may be adopted or ratified by a resolution). See City of Riviera Beach v. Witt, 286 So.2d 574 (Fla. 4th DCA 1973); 1977 Op. Att'y Gen. Fla. 077-140 (December 30, 1977); and McQuillan, Municipal Corporations, Vol. 10, § 29.37, P. 342. Cf. Brown v. City of St. Petersburg, 111 Fla. 718, 153 So. 140, 141 (1933) (where the city charter required similar action to be taken under the auspices of an ordinance).
Appellees argue that Resolutions 1586-72 and 1587-72 were implicitly overruled by the motion to award the contract to Jerry's. We disagree. A duly approved *667 resolution may not be ignored without an express intent to overturn its provisions. Appellees' suggestion would render resolutions meaningless, ineffectual acts of government. "The Board, upon written recommendation of the Manager, may by resolution adopted by two-thirds vote of the members present waive competitive bidding when it finds this to be in the best interest of the county." Dade County, Fla., Charter § 4.03(D). Since resolutions requiring competitive bidding were not waived, they were required to be followed.
Section 4.03(D) of the Dade County, Florida, Charter states:
Contracts for public improvements and purchases of supplies, materials, and services other than professional shall be made whenever practicable on the basis of specifications and competitive bids. Formal sealed bids shall be secured for all such contracts and purchases when the transaction involves the expenditure of $1,000 or more. The transaction shall be evidenced by written contract submitted and approved by the Board.
The contract under review is a contract for purchases of supplies, materials, and services other than professional. Appellees argue that this contract does not involve the expenditure by the county of $1,000 or more since the bids contemplate the retention of funds by the bidder and the submission of a portion of those funds to the county. Their theory removes only the requirement for formal sealed bids but does not negate competitive bidding requirements.
In addition to the resolutions, charter, and code, Sections 125.012(17) and 125.35, Florida Statutes (1977), discuss competitive bidding.[1]
Appellees contend the contract under consideration is a non-exclusive, a non-aeronautical contract and that the provisions of Section 125.35, Florida Statutes (1977), are overridden by the subsequent passage of Section 125.012(17), Florida Statutes (1977), which imply that only exclusive franchises must be awarded by competitive bidding.
Because we cite the foregoing statutes for the sole purpose of illuminating a legislative awareness of competitive bidding policies, we do not decide the merit of that argument. Our decision is founded on the resolutions, charter, and public policy arguments.

2. Abuse of Discretion.
Under competitive bidding, the contract must be awarded as a function of the "reasonable exercise of power by municipal governmental authorities ... as a matter of public policy and fidelity to public trust." Adolphus v. Baskin, 95 Fla. 603, 116 So. 225 (1928).
The standard to be applied in deciding whether the decision was exercised arbitrarily is delineated in City of Pensacola v. Kirby, 47 So.2d 533, 535-36 (Fla. 1950):

*668 While the law imposes no mandatory obligation upon a public agency in respect to the letting of competitive contracts that will require the agency in every case to consider the lowest dollars and cents bid as being "the lowest responsible bid" to the exclusion of all other pertinent factors that may be taken into consideration, the law does require that where discretion is vested in a public agency with respect to letting public contracts on a competitive basis, the discretion may not be exercised arbitrarily or capriciously but must be based upon facts reasonably tending to support the conclusions reached by such agency. See Culpepper v. Moore, Fla., 40 So.2d 366; Willis v. Hathaway, 95 Fla. 608, 117 So. 89. The record reveals that the discretion exercised by the city council did not rest upon material facts reasonably tending to support the conclusions reached by such agency. (emphasis added)
What facts did the Dade County Board of Commissioners have before it upon which it exercised its discretion? The Board awarded the contract to Jerry's because Jerry's was a local firm. Nothing in the record, however, discloses that Jerry's was a local firm. Furthermore, if the Board desired the services of a local concern, it should have given Marriott the same opportunity to show whether it could qualify. A decision cannot be based upon "ignorance through lack of inquiry." William A. Berbusse, Jr., Inc. v. North Broward Hospital District, supra, at 551.
Residing in the area was rejected by the court as a basis for an award where the award had been made solely because "he is a local man, will use local contractors and local labor and will patronize local supply houses." Adolphus v. Baskin, supra. The court found that the substantial rights of taxpayers would be materially affected by this exercise of authority, stating "unreasonable action taken under color of authority that materially affects substantial rights of persons and of taxpayers is contrary to the principles upon which our system of government is founded." Adolphus v. Baskin, supra, at 226.
In evaluating Marriott's and Jerry's bids, the trial court found that ample evidence existed to show a basis for doubt. The doubt referred to was not directed to Marriott's ability to perform its contract, nor with whether it was a responsible bidder, but only with whether it was a financially superior bidder. The trial judge did not, however, find Jerry's bid to be more advantageous, nor did the trial court find that the bidders were equal. On the face of the bids, in the absence of any finding to the contrary by the court, Marriott remains the best bidder within the standards set by the Board when it elected to solicit competitive bids.
We find that the Board based its award of the contract on erroneous considerations beyond its authority constituting an abuse of discretion. The trial court erred in approving its award and in finding no abuse of discretion.
Since we hold that the Board exceeded its lawful authority and discretion, we hold that the contract award is invalid. On the basis of the bids submitted to the Board, the award must be made to Marriott as the numerically superior bidder.
For the foregoing reasons, we reverse the decision of the trial court and award the contract to Marriott.
NOTES
[1] Section 125.012, Florida Statutes (1977), provides:

Any county and the board of county commissioners thereof shall have the power, in addition to the powers otherwise conferred:
.....
(17) To grant exclusive or nonexclusive franchises to persons, firms or corporations for the operating of restaurants, cafeterias, bars ... and other concessions of a nonaeronautical nature in, on and in connection with any project owned and operated by the county. However, no exclusive franchise shall be so granted unless the board of county commissioners of said county shall award such franchise following receipt of sealed, competitive bids in the manner prescribed by law, or cause to be published ... notice of the fact that it intends to grant such exclusive franchise and will at a time certain to be fixed in said notice ... enter into negotiations with any interested parties as to the terms, conditions, and provisions of any such exclusive franchise.
Section 125.35, Florida Statutes (1977), states:
The board of county commissioners is expressly authorized to sell and convey any property, real or personal, and to lease real property, belonging to the county, ... to the highest and best bidder for the particular use it deems to be the highest and best, or, alternatively, in the case of an airport operation or facility lease, after negotiation, for such length of term and such conditions as the governing body may in its discretion determine.