Mr. W. Crosby Few Attorney for Hillsborough County School Board Suite 200 501 East Jackson Street Tampa, Florida 33602
Dear Mr. Few:
This is in response to your request for an opinion on substantially the following question:
 MAY THE HILLSBOROUGH COUNTY SCHOOL BOARD ADOPT A POLICY REQUIRING AT LEAST 50 PERCENT OF THE PERSONS EMPLOYED BY ANY CONTRACTOR OR SUBCONTRACTOR ON ANY CONSTRUCTION, REMODELING, RENOVATION, DEMOLITION OR IMPROVEMENT OF EDUCATIONAL OR ANCILLARY PLANTS TO BE RESIDENTS OF HILLSBOROUGH COUNTY, WITH AT LEAST 10 PERCENT OF PERSONS EMPLOYED BEING WOMEN AND AT LEAST 25 PERCENT OF SUCH PERSONS BEING MINORITIES?
A supplementary correspondence enclosed with your letter states that the Florida Consumer Action Network, which originally proposed the adoption of the foregoing policy (hereafter referred to as home town hiring) "is convinced that the benefits of such a policy would in fact produce `responsible' bidders in that it will produce bidders who lower the area's unemployment rate, cure inequalities in the area based on race and sex, and employ workers who upgrade the quality of workmanship on publicly funded projects."
Section 235.31, F.S. (1986 Supp.), governs, inter alia, the advertising and awarding of contracts for the construction of educational plants and provides in subsection (1)(a):
 As soon as practicable after any bond issue has been voted upon and authorized or funds have been made available for the construction, remodeling, renovation, demolition, or otherwise for the improvement, of any educational or ancillary plant, and after plans for the work have been approved by the office [Office of Educational Facilities of the Department of Education, see, s. 235.011(14), F.S. (1986 Supp.)], the board [as defined in s. 235.011(3), F.S. (1986 Supp.)], after advertising the same in the manner prescribed by law or rule, shall award the contract for such building or improvements to the lowest responsible bidder. (e.s.)
See also, s. 235.011(1), (5), (6), (13), (16), (17), and (21), F.S. (1986 Supp.), respectively defining the terms "ancillary plant," "educational facilities," "educational plant," "new construction," "remodeling," "renovation," and "site improvement" for the purpose of Ch. 235, F.S.
Subsection (1)(b) of s. 235.31, F.S. (1986 Supp.), grants to counties, municipalities, community colleges or district school boards the option of setting aside up to 10 percent of the total amount of funds allocated for construction capital project contracts with minority business enterprises, as defined in s.287.094, F.S. Such contracts must be competitively bid only among minority business enterprises, and the funds set aside "shall be used to redress present effects of past discriminatory practices and shall be subject to periodic reassessment to account for changing needs and circumstances." See, s. 235.011(4), F.S. (1986 Supp.), defining "capital project." Cf., s. 287.093, F.S.
Supplementary materials enclosed with your letter of inquiry indicate that the staff for the Florida Board of Education has determined that the adoption of home town hiring would create new and additional qualifications and criteria not contemplated by s. 235.31(1)(a), F.S. (1986 Supp.) However, the Florida Consumer Action Network has concluded that such a policy would not violate the foregoing statute, especially in light of the phrase "lowest responsible bidder" contained therein, citing, inter alia, Culpepper v. Moore, 40 So.2d 366 (Fla. 1949); Eggart v. Westmark,45 So.2d 505 (Fla. 1950), as supporting authorities therefor. Both of the foregoing cases focused upon the courts' construction of the term "lowest responsible bidder" with regard to a public agency's discretion in the letting of certain contracts, and the determinative factors upon which such agency must bottom its decision.
In Culpepper v. Moore, 40 So.2d at 370, the Florida Supreme Court stated that
 while the discretion vested in a public agency in respect to letting public contracts may not be exercised arbitrarily or capriciously, but that its judgments must be bottomed upon facts reasonably tending to support its conclusions, no mandatory obligation is imposed upon such an agency to consider the lowest dollars and cents bid as being the "lowest responsible bid" in every case, to the exclusion of all other pertinent factors which may well support a reasonable decision to award the contract to a contractor filing a higher bid. (e.s.)
The court in Eggart v. Westmark, 45 So.2d at 507, directed that in securing bids to purchase voting machines, the term "lowest responsible bidder", contained in s. 125.08, F.S. 1941, should "not be taken literally." However, neither case addressed the issue of whether a public agency was authorized to adopt and apply in each instance a home town hiring policy in the letting of all contracts, the effect of which would limit the board's choices to a strictly defined class of contractors and subcontractors. See also, AGO's 62-161 (determination of lowest responsible bidder depends upon particular facts in each case); 51-371, October 23, 1951, Biennial Report of the Attorney General, 1951-1952, p. 228.
This office has consistently stated that with the amendment of s. 230.03(2), F.S., in 1983 by s. 7, Ch. 83-324, Laws of Florida, district school boards have been granted "home rule" powers and thus may exercise any power for school purposes in the operation control and supervision of the free public schools in their districts unless expressly prohibited by the State Constitution or general law. See, AGO's 83-72; 84-58; 84-95; 86-45. And see, s. 230.03(2), F.S., which provides:
 In accordance with the provisions of s. 4(b) of Art. IX of the State Constitution, district school boards shall operate, control, and supervise all free public schools in their respective districts and may exercise any power except as expressly prohibited by the State Constitution or general law. (e.s.)
Despite the broad home rule powers granted by s. 230.03(2), F.S., to district school boards, in the event of a conflict between a state statute and a rule, policy or other type of legislative action taken by a district school board, the state statute would prevail. See, AGO 84-95 wherein this office concluded that the Suwannee County District School Board was unauthorized to expend or disburse district school funds for other than school purposes in the operation and supervision of the district schools or in any manner conflicting with or other than as specified in s. 236.29, F.S.; AGO 83-72.
Section 235.31, F.S. (1986 Supp.), constitutes the legislative direction in the advertising and awarding of contracts for the "construction, remodeling, renovation, demolition, or otherwise for the improvement, of any educational or ancillary plant." Pursuant to that subsection, a "board," defined in s. 235.011(3), F.S. (1986 Supp.), as including a district school board, following the occurrence of certain events and procedures, "shall award the contract for such building or improvements to the lowest responsible bidder." I perceive of no statutory authority in s. 235.31 to allow district school boards to restrict the awarding of the foregoing contracts to only those contractors or subcontractors who have complied with the home town hiring scheme. Rather, the courts have generally construed the term "lowest responsible bidder" in statutes requiring that contracts be awarded to the lowest responsible bidder, to mean that the officials may consider the differences or variations in the character or quality of the materials or work proposed to be supplied as well as the pecuniary ability, judgment, skill, experience, reputation, integrity and other matters concerning the bidder, in determining who will be awarded the contract. See, Suburban Inv. Co. v. Hyde, 55 So. 76 (Fla. 1911); Eggart v. Westmark, supra; Annot., 27 A.L.R.2d 917 (1953); 10 McQuillin Municipal Corporations s. 29.73; 43 Fla.Jur.2d Public Works s. 23. Thus, judicial constructions of the term "lowest responsible bidder" have generally focused upon an analysis involving many components, rather than a circumscription of factors. See also, Marriott Corporation v. Metropolitan Dade County, 383 So.2d 662 (3 D.C.A.Fla., 1980) and Adolphus v. Baskin, 116 So. 225 (Fla. 1928), wherein the respective courts rejected awards made to contractors on the basis of their being local, focusing instead on such factors as the public benefit and whether the losing competitor was a financially superior bidder. Compare, American Institute for Imported Steel, Inc. v. Office of General Services, 365 N.Y.S.2d 56
(N.Y.Sup.Ct. 1975), aff'd, 348 N.E.2d 913 (N.Y. 1976), wherein the Office of General Services, operating under a statute which provided in part "that no such contract shall be let to a bidder other than the lowest responsible bidder. . . .", instituted a "Buy American" policy. Noting that the purpose of such statutes is to conserve the taxpayers' money, the court set forth five criteria for determining the lowest responsible bidder: (1) the reliability of the bidder; (2) the quality of the article; (3) the conformity thereof with specifications; (4) the purpose for which it is required; and (5) the terms of delivery. Thus, the court held that the "Buy American" policy of the Office of General Services was outside the ambit of its authority and therefore invalid.
Based upon the foregoing, I am of the opinion that s. 235.31, F.S. (1986 Supp.), provides no basis on which a school board may institute a home town hiring policy, and to the extent that s. 235.31 constitutes the legislative direction regarding the advertising and awarding of contracts for the construction or improvement of any educational or ancillary plant, the Hillsborough County School Board may not act in a manner inconsistent therewith. The rules of the State Board of Education support the foregoing conclusion. See, Rule 6A-2.016(6), F.A.C. (board shall consider all bids received); Rule 6A-2.031(8)(e), F.A.C. (place of residence shall not become criterion for prequalification of contractor). It also appears that the Legislature has promulgated its own procedure "to redress present effects of past discriminatory practices" in subsection (b) of s. 235.31. That subsection accords the option to district school boards to lay aside up to 10 percent of the total funds allocated for construction capital project contracts to be competitively bid only among minority business enterprises as defined in s. 287.094, F.S.
See also, s. 489.125, F.S., directing that "[n]otwithstanding any provision to the contrary in s. 235.31 relating to prequalification of bidders, any person holding a certificate [as defined in s. 489.105(6), F.S.] shall be deemed qualified to participate in any project thereunder." Cf., s. 235.014(11), F.S. (1986 Supp.), directing that as far as practicable, the Office of Educational Facilities of the Department of Education shall ensure that local personnel participate as much as possible in determining programs and activities.
Accordingly, it is my opinion that in light of the provisions of s. 235.31, F.S. (1986 Supp.), setting forth the procedures for the awarding of contracts and providing for the option of setting aside up to 10 percent of the total amount allocated for construction capital project contracts with minority business enterprises, the Hillsborough County School Board is not authorized to adopt a policy inconsistent with such provisions and may not therefore require at least 50 percent of persons employed by a contractor or subcontractor on the construction, remodeling, renovation, demolition or improvement of educational or ancillary plants to be residents of Hillsborough County, with at least 10 percent of persons employed being women and at least 25 percent of such persons being minorities.
Sincerely,
Robert A. Butterworth Attorney General
Prepared by:
John Rosner Assistant Attorney General