[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Community Associates, Inc., seeks a preliminary injunction to prevent the defendant City of New Haven from giving effect to a contract with the defendant Columbus House, Inc. The plaintiff alleges that the contract for management services at the City's shelter for the homeless on Grand Avenue was awarded to Columbus House, Inc. for the period from October 1, 1991 through June 30, 1992 in violation of the City Charter provision concerning competitive bidding and as a result of an exercise of favoritism.
It is unfortunate that two organizations committed to providing services for needy citizens should be pitted against each other in this way, and the testimony taken at the hearing on the plaintiff's application revealed that the parties had CT Page 8580 endeavored to work out their differences through other responsible means before resorting to the court for a determination of the legal issues that divide them in their shared goal of providing for the homeless.
To obtain temporary injunctive relief, a plaintiff must show clearly that protectable interests are at stake, that it has a reasonable certainty of success on the merits of the claim, and that unless injunctive relief is granted it will suffer irreparable injury for which it lacks an adequate remedy at law. Berin v. Olson, 183 Conn. 337, 340 (1981); Covenant Radio Corporation v. Ten Eighty Corporation, 35 Conn. Sup. 1, 3 (1977).
A threshold issue is whether the interest the plaintiff seeks to protect — the preservation of the integrity of the competitive bidding procedures — can be raised by the plaintiff, which is presently supplying the managerial services for the shelter at issue and which submitted a bid to continue in that role for the time period specified in the City's request for proposals for such services.
As a general rule, the disappointed bidder in a statutory competitive bidding situation does not have standing to challenge the acceptance of another bid because a bid is merely an offer to contract, and the offeror has no enforceable legal right to enforce if its offer is not accepted. Ardmare Construction Co. v. Freedman, 191 Conn. 497, 501-502 (1983); John J. Brennan Construction Corp. v. Shelton, 187 Conn. 695, 702 (1982). The Connecticut Supreme Court has, however, recognized an exception where an unsuccessful bidder is seeking to further the public interest in protecting a public competitive bidding process from fraud, favoritism, or other acts undermining the objective and integrity of the bidding process. Ardmare Construction Co. v. Freedman, 191 Conn. 497 at 504-505; Spiniello Construction Co. v. Manchester, 189 Conn. 539 (1983).
The plaintiff's claim fits squarely within the exception recognized by the Supreme Court in Ardmare and Spiniello, supra. The plaintiff alleges that the City manipulated for the benefit of Columbus House, Inc. the process of reviewing the proposals and that it engaged in favoritism when it adopted a criterion not stated in the written request for proposals. The court finds that the plaintiff has established its claim with sufficient clarity to demonstrate both that it has standing pursuant to Ardmare and that it has the requisite degree of probability of success on the merits of its claim to warrant injunctive relief.
The plaintiff made the following factual showing. In July 1990 the plaintiff began the management of the Grand Avenue shelter with less than two days' preparation time when another CT Page 8581 provider of these services left after a dispute with the City. Though the first few days of the plaintiff's operation of the shelter were marred by the kinds of problems to be expected from a precipitous start, the ensuing term of the plaintiff's services has been smooth and has not been the source of any objection by the City agencies involved in the effort to shelter homeless people.
In April 1991, the City issued a request for proposals ("RFP") for management services for various shelters, including the Grand Avenue shelter. The RFP identified the contract term as July 1, 1991 to June 30, 1992 and set April 22, 1991 as the due date for proposals. The RFP listed eleven criteria. None of these criteria indicated that a preference would be given to bidders whose employees or board of directors resided in New Haven. The RFP indicated that the cost of service was not to exceed $375,000.00. On or before the bid deadline of April 22, 1991, the plaintiff, a non-profit organization with an office in Oakville, submitted a proposal to continue the services it was already providing at a cost to the City of $366,132.00 for the contract term. Columbus House, Inc, a non-profit organization; which operates another shelter in New Haven, submitted a proposal with a budget of $501,250.00. It identified the cost to the City as $375,000.00, with the explanation that it expected to receive $126,000.00 from the State Department of Human Resources.
Section 73 of the Charter of the City of New Haven provides in applicable part that "[a]ll contracts to be made or let for work to be done for . . . the City . . . shall be made by the purchasing agent, . . . the purchasing agent shall award the contract to the lowest responsible bidder. . . ." The only proposals received were those from Community Associates and Columbus House, Inc. Claire Hendricks, the City's Human Resources Administrator, testified that Carmen Rodriquez, the administrator with direct supervisory responsibility for the City's shelters, and Alma Ayola, the deputy human resources administrator, were directed to interview both organizations to evaluate their proposals. This interview did not lead to any determination that the plaintiff was not a responsible bidder, however, the City determined that instead of granting the contract to the lowest bidder for the term indicated in the RFP, July 1, 1991 through June 30, 1992, it would continue the plaintiff's existing contract through September 30, 1991 at a cost to the City of $88,000.00 for one-quarter of the contract period, and award the remainder of the indicated contract term to Columbus House, Inc. at a cost to the City of $281,250.00, that is, three-quarters of the term for three-quarters of the $375,000.00 cost identified in the proposal submitted in response to the City's RFP. (Ex. L).
The court finds on the basis of the evidence presented that CT Page 8582 the City officials involved in securing managerial services for the Grand Avenue shelter initially regarded the proposals of the two bidders as essentially equivalent but manipulated the awarding of the contract and altered the dates for the contract term out of favoritism for Columbus House, Inc. In its proposal, Columbus House had indicated the hope that an expanded program would be offered through use of $126,000.00 in State funding, however, that funding had not been awarded as of the date proposals were due, and the only assurance that Columbus House could offer in April was that it expected to receive the funds and spend them as outlined in its proposal if the funds were in fact made available by the State in a grant that would not start until October 1, 1991. The City then divided the contract to adjust to the October 1 date for the benefit of Columbus House, Inc. The contract which the City actually entered into with Columbus House on July 19, 1991 for the period from October 1, 1991 to June 30, 1992, (Ex. L) works out to a pro rata adoption of the bid by Columbus House, Inc. of $375,000.00, that is, the contract is for three-quarters of the term set forth in the RFP and is for $281,250.00.
The court further finds that when asked by the officials of the plaintiff to explain why its lower bid was not being accepted, Ms. Hendricks indicated that Columbus House, Inc. was adjudged the preferable contractor because it was a local agency, and that many members of its Board of Directors were local residents. While the cited provisions of the City Charter allow for an inquiry into whether the low bidder is a responsible bidder, there is no basis for the City's claim that the inquiry into responsibility permits the addition of a new criterion, not stated in an RFP, concerning the location of the contractor. Ms. Hendricks testified that there are "unwritten regulations" by which City departments may evaluate bids and award contracts other than to the lowest bidder.
Such "unwritten regulations," of uncertain and apparently shifting content, do not comport with the clear language of the City Charter, and in this instance they have been demonstrated to have been used to award contract other than to the lowest responsible bidder on grounds that this court finds involved favoritism.
"Favoritism," though identified in Spinello and Ardmare, supra, as a violation of the purpose of competitive bidding, is not defined in those cases or in any Connecticut cases cited by the parties. Black's Law Dictionary defines the term as "[i]nvidious preference and selection based on friendship and factors other than merit." In the context of Charter provisions providing for competitive bidding, "merit" is measured by the words of the Charter, which require an award to the lowest responsible bidder. The plaintiff was the low bidder, and its bid was not rejected as not being a "responsible" bid within the CT Page 8583 meaning of the Charter. The manipulation of the terms of the RFP and the addition of a criterion of being "local" were accomplished for the benefit of Columbus House, and the City in fact entered into a contract which would cost the taxpayers more than if it had contracted with the lowest responsible bidder. The plaintiff is based in Oakville, with some employees who reside in the New Haven area, and the residence of its board members was not shown to be so related to the fulfillment of the contract as to make the plaintiff not a "responsible" bidder. See Marriott Corp. v. Metropolitan Date County, 383 So.2d 662 (Fla.App. 1980).
It must be noted that while the laudable interest in receiving the use of a State grant was articulated as a reason for favoring the Columbus House proposal, the contract actually signed with Columbus House (Ex. L) makes no reference to that grant or to any obligation of the contractor to apply any outside monies to the work within the scope of the contract. Several witnesses credibly testified that City officials identified the reason for acceptance of the Columbus House bid as that organization's being "local."
The plaintiff has demonstrated the requisite showing of a likelihood on the success of the merits of its claim that the selection of Columbus House proceeded from favoritism and that the contract was divided in order to accommodate this bidder, actions that, within the scope of Spinello, supra, "undermined the objective and integrity of the proposal process."
As the Supreme Court noted in Ardmare, supra, at 504 a party who seeks to enforce competitive bidding procedure acts in effect as a private attorney general. See also Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 864 (D.C. Cir. 1970). In such situations, injunctive relief to achieve the purpose of enforcement of a Charter is warranted. McQuillan, Municipal Corporation, 29.41 and 29.85. In other situations in which the objective is achievement of compliance with a statute or Charter provision, proof of violation of the provision is sufficient without a further demonstration of irreparable harm, for example, in the context of enforcement of a zoning regulation by a municipality. Farmington v. Viacom Broadcasting, Inc., 10 Conn. App. 190,197 cert. denied, 203 Conn. 808 (1987); Greenwich v. Kristoff, 2 Conn. App. 515, 521, cert. denied, 194 Conn. 807
(1984).
The public interest in the integrity of competitive bidding would not be adequately preserved or redressed by an award of money damages to the plaintiff, as the City suggests, and it appears therefore that injunctive relief is necessary.
The application for a preliminary injunction is hereby CT Page 8584 granted, and the defendant City of New Haven is enjoined from giving effect to the contract entered into with the defendant Columbus House, Inc. (Ex. L) until further order of the court.
BEVERLY J. HODGSON, JUDGE.