Mr. Fred S. Disselkoen City Attorney City of Ormond Beach Post Office Box 277 Ormond Beach, Florida 32175-0277
Dear Mr. Disselkoen:
You have asked for my opinion on the following question:
When a local government has entered into a number of continuing contracts for professional engineering services in accordance with the Consultants' Competitive Negotiation Act may the local government seek fee quotations from those firms under contract, in the course of selecting a firm to perform a given project?
In sum:
The Consultants'Competitive Negotiation Act does not provide criteria for negotiating a contract for professional services under a continuing contract and a municipality may develop its own procedures for evaluating such a contract.
According to your letter, the City of Ormond Beach currently has four "continuing contracts," as defined in s. 287.055(2)(g), F.S. (1992 Supp.), for the provision of professional engineering services. Each contract has a general fee structure describing the hourly fee per position, but each also provides that given projects will be negotiated and defined in subsequent addenda.[1]
The Consultants' Competitive Negotiation Act, s. 287.055, F.S.(1992 Supp.), sets forth requirements for the procurement and contracting of professional architectural, engineering, landscape architectural, or land surveying services[2] by governmental agencies.[3] The statute also provides that "[n]othing in this act shall be construed to prohibit a continuing contract betweena firm and an agency."[4] A "continuing contract" is defined in s. 287.055(2)(g), F.S.(1992 Supp.), as:
[A] contract for professional services entered into in accordance with all the procedures of this act between an agency and a firm whereby the firm provides professional services to the agency for projects in which construction costs do not exceed 500,000, for study activity when the fee for such professional service does not exceed 25,000, or for work of a specified nature as outlined in the contract required by the agency, with no time limitation except that the contract shall provide a termination clause.
However, nothing in s. 287.055, F.S. (1992 Supp.), purports to regulate the terms of a continuing contract. Nor does the statute address instances where an agency seeks to impose additional criteria on continuing contractors to insure impartiality when a choice must be made among them.
You have specifically directed my attention to subsection (4) of s. 287.055, F.S. (1992 Supp.), which provides that "[t]he agency may request, accept, and consider proposals for the compensation to be paid under the contract only during competitive negotiations . . . ."[5] You question whether this provision would preclude the City of Ormond Beach from considering compensation for projects falling within the scope of its continuing contracts. However, the plain language of the statute indicates that these requirements are to be utilized in the competitive negotiation process.[6] In fact, subsection (4)(d), states that "[n]othing in this act shall be construed to prohibit a continuing contract between a firm and an agency."
Therefore, if a municipality determines that it is appropriate to develop criteria for determining which firm under continuing contract with the city will be selected to perform a project, it may do so.[7] It may be advisable for the city to adopt an ordinance or develop an administrative rule or procedure to insure that these criteria are applied uniformly to all continuing contracts into which the city enters.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] While this office has not been asked to comment on this arrangement I would note that the continuing contract provision of s. 287.055, F.S. (1992 Supp.), represents an exception to the general competitive bidding provisions of the Act and should be read narrowly and utilized sparingly in order to avoid an appearance of circumventing the requirements of the statute. Cf., City of Lynn Haven v. Bay County Council of Registered Architects, Inc., 528 So.2d 1244, 1246 (1 D.C.A. Fla., 1988) (in which the court determined that the City's procedures contravened the legislative intent and undermined the effectiveness of the CCNA. Specifically, the City's bidding procedure would not effectuate an equitable distribution of contracts among the most qualified firms pursuant to Section 287.055(4), Florida Statutes.)
[2] See, s. 287.055(2)(a), F.S. (1992 Supp.), defining "[p]rofessional services."
[3] See, s. 287.055(2)(b), F.S. (1992 Supp.), which defines "[a]gency" as "the state or a state agency, municipality, or political subdivision, or a school district or school board."
[4] Section 287.055(4)(d), F.S. (1992 Supp.).
[5] Section 287.055(4)(b), F.S. (1992 Supp.).
[6] See, Heading to s. 287.055(4), F.S. (1992 Supp.), which indicates that this subsection relates to competitive selection.
[7] Cf., Marriott Corporation v. Metropolitan Dade County,383 So.2d 662 (3 D.C.A. Fla., 1980), which recognizes that even under competitive bidding requirements contracts must be awarded as a function of the reasonable exercise of power by municipal governmental authorities as a matter of public policy and fidelity to the public trust; William A. Berbusse, Jr., Incorporated v. North Broward Hospital District, 117 So.2d 550 (2 D.C.A. Fla., 1960) (where statute requires that public body award contracts to low bidder, proper municipal authorities have wide discretion in determination of lowest responsible bidder).