Dear Mr. Swaine:
On behalf of the Sebring Airport Authority Board, you have asked for my opinion on substantially the following questions:
1. Is the Sebring Airport Authority authorized to enter into multiple continuing contracts for professional services pursuant to section287.055, Florida Statutes?
2. To comply with the purchasing and bidding requirements of the Authority's special act, can the Sebring Airport Authority request those same service providers to bid on each subsequent project that would qualify as a "continuing contract" pursuant to section 287.055(2)(g), Florida Statutes, the "Consultants' Competitive Negotiation Act?"
Question One
Section 287.055, Florida Statutes, the Consultants' Competitive Negotiation Act (CCNA), sets forth requirements for procuring and contracting for professional architectural, engineering, landscape architectural, or land surveying and mapping services. Under the act, an agency, including a special district, must competitively select and negotiate with the most qualified firm to provide these professional services for a project.[1] The Sebring Airport Authority is listed as a dependent special district by the Florida Department of Community Affairs.[2]
In opinions applying the Consultant's Competitive Negotiation Act, this office has noted that the CCNA was designed to provide procedures for state and local governmental agencies to follow in the employment of professional service consultants to make the contracting for professional services more competitive and to require the employment of the most qualified and competent individuals and firms at fair, competitive, and reasonable compensation.[3] The CCNA applies to any agency subject to the act with the power or duty to contract for professional services as set forth in section 287.055, Florida Statutes. This office has determined that the CCNA applies to various governmental entities, including a municipality in accomplishing the purposes for which a grant is received;[4] the state fair authority;[5] a county civic facilities authority;[6] a hospital taxing district;[7] a multi-county airport authority;[8] and a county housing authority.[9] The CCNA was enacted for the public benefit and should be interpreted most favorably to the public.[10]
The original legislation creating the CCNA, Chapter 73-19, Laws of Florida, speaks directly to problems of conflict with other laws. The act specifically provides that "[a]ny laws, or parts of law in conflict with the provisions of this act are hereby repealed." Thus, to the extent that any provision of the Sebring Airport Authority legislation conflicts with the CCNA, those sections were repealed, effective July 1, 1973. (See s. 9, Ch. 73-19, Laws of Florida, providing the effective date of the act.)
The CCNA provides that "[n]othing in this act shall be construed to prohibit a continuing contract between a firm and an agency."[11] A "continuing contract" is defined in the statute as:
"a contract for professional services entered into in accordance with all the procedures of this act between an agency and a firm whereby the firm provides professional services to the agency for projects in which construction costs do not exceed $1 million, for study activity when the fee for such professional service does not exceed $50,000, or for work of a specified nature as outlined in the contract required by the agency, with no time limitation except that the contract must provide a termination clause. Firms providing professional services under continuing contracts shall not be required to bid against one another."[12]
Nothing in section 287.055, Florida Statutes, limits the number of continuing contracts into which an agency may enter at one time. In fact, the statute appears to recognize that multiple contracts may be in effect simultaneously; otherwise, the statutory language precluding firms from being required to bid against one another would be superfluous.[13] Therefore, I am of the opinion that the Sebring Airport Authority may enter into multiple continuing contracts for professional services pursuant to section 287.055, Florida Statutes.
I would note that this office, in Attorney General's Opinion 93-56, concluded that the CCNA does not provide criteria for negotiating an engagement to contract for professional services under a continuing contract, and a municipality may develop its own procedures for evaluating such a contract. Thus, as that opinion and subsequent opinions of this office have recognized, if a municipality determines that it is appropriate to develop criteria for determining which firm under continuing contract with the city will be selected to perform a project, it may do so.[14] However, the opinion suggests that it may be advisable for governmental entities to adopt administrative rules of procedure to insure that these criteria are applied uniformly to all continuing contracts into which the entity is a party.[15]
Question Two
In 2005, the definition of "continuing contract" in section 287.055, Florida Statutes, was amended to provide that firms providing professional services under continuing contracts cannot be required to bid against one another.[16] The language of the statute is clear and unequivocal.[17]
However, the special act controlling the operation of the Sebring Airport Authority contains requirements for competitive bidding on certain projects. Section 8, Chapter 2005-300, Laws of Florida (originally codified at section 8, Chapter 67-2070, Laws of Florida), provides:
"No contract for the construction, repair, or alteration of any facility or part of the same, or the purchase of equipment, services, or supplies involving an expenditure of more than $10,000, shall be awarded by the authority unless the authority advertises for sealed bids at least once a week for 2 consecutive weeks and such contract is awarded to the lowest responsible bidder. However, the authority may reject all bids."
As discussed above, the Legislature, in enacting the CCNA, has declared that any provision in law that conflicts with the CCNA's requirements, is repealed. In this case, the language contained in CCNA's enabling legislation would control to repeal "[a]ny laws, or parts of law in conflict with the provision of [the CCNA]." Thus, to the extent section 8, Chapter 2005-300, Laws of Florida, conflicts with the provisions of section 287.055, Florida Statutes, the CCNA will control. (I would note that the special act creating and regulating the Sebring Airport Authority, Chapter 2005-300, Laws of Florida, was reenacted pursuant to legislative directive as provided in section 189.429, Florida Statutes.) This provision required each district, by December 1, 2004, to submit to the Legislature a draft codified charter of all its special acts for reenactment by the Legislature as a single act. The Sebring Airport Authority complied with this directive and the Legislature reenacted the authority's charter in Chapter 2005-3000, Laws of Florida. Section 189.429(2), Florida Statutes, provides:
"The reenactment of existing law under this section shall not be construed as a grant of additional authority nor to supersede the authority of any entity pursuant to law. Exceptions to law contained in any special act that are reenacted pursuant to this section shall continue to apply."
The CCNA repealed the conflicting provisions of section 8, Chapter 2005-300, Laws of Florida, with regard to professional services contracts. The reenactment of the special act did not revive this provision. Thus, the authority should employ section 287.055, Florida Statutes, for any contracts for the acquisition of professional services covered by the CCNA and continuing contracts for these services.
Section 8, Chapter 2005-300, Laws of Florida, establishes strict low bid criteria for the award of contracts with the Sebring Airport Authority. For those situations involving contracts for professional services, this provision would clearly conflict with the CCNA's requirement that an agency competitively select and negotiate with the most qualified firm to provide professional services "at compensation which the agency determines is fair, competitive, and reasonable." The CCNA repealed the conflicting provisions of section 8, Chapter 2005, Laws of Florida, with regard to professional services contracts. The reenactment of the special act did not revive this provision. Thus, the authority should employ section 287.055, Florida Statutes, for any contracts for the acquisition of professional services covered by the CCNA and continuing contracts for these services.
Therefore, in response to your second question, section 287.055(2)(g), Florida Statutes, would control any continuing contracts for professional services into which the Sebring Airport Authority may enter and would prohibit the authority from asking firms providing professional services under continuing contracts to bid against one another.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] See s. 287.055(2)(b), Fla. Stat., which defines "[a]gency" as "the state, [or] a state agency, a municipality, [or] a political subdivision, [or] a school district, or a school board[;]" and s.1.01(8), Fla. Stat., defining "political subdivision" to include "all other districts in this state." And see ss. 287.055(4) and (5), Fla. Stat.
[2] See Florida Department of Community Affairs, Official List of Special Districts Online, "Sebring Airport Authority," at www.floridaspecialdistricts.org/OfficialList/report.cfm.
[3] See, e.g., Ops. Att'y Gen. Fla. 73-216 (1973), 74-308 (1974), and 75-56 (1975); and see "Whereas" clauses, Ch. 73-19, Laws of Fla.
[4] See Op. Att'y Gen. Fla. 91-34 (1991).
[5] See Op. Att'y Gen. Fla. 83-20 (1983).
[6] See Op. Att'y Gen. Fla. 74-308 (1974).
[7] See Op. Att'y Gen. Fla. 74-89 (1974).
[8] See Op. Att'y Gen. Fla. 75-56 (1975).
[9] See Op. Att'y Gen. Fla. 78-19 (1978).
[10] Cf. Canney v. Board of Public Instruction of Alachua County, 278 So. 2d. 260, 263 (Fla. 1973); AGO 74-308.
[11] See s. 8(4), Ch. 73-19, Laws of Fla., specifically prohibiting a governmental entity conducting competitive bidding from asking firms providing professional services under continuing contracts to bid against one another.
[12] Section 287.055(4)(d), Fla. Stat.
[13] Section 287.055(2)(g), Fla. Stat.
[14] Pinellas County v. Woolley, 189 So. 2d 217 (Fla. 2d DCA 1966), citing 82 C.J.S. Statutes s. 343; Terrinoni v. Westward Ho!,418 So. 2d 1143 (Fla. 1st DCA 1982); City of Pompano Beach v. Capalbo,455 So. 2d 468 (Fla. 4th DCA 1984) (words in a statute should not be construed as surplusage if reasonable construction which will give them some force and meaning is possible).
[15] Cf. Marriott Corporation v. Metropolitan Dade County,383 So. 2d 662, 663 (Fla. 3d DCA 1980), which recognizes that even under competitive bidding requirements contracts must be awarded as a function of the reasonable exercise of power by municipal governmental authorities as a matter of public policy and fidelity to the public trust; William A. Berbusse, Jr., Incorporated v. North Broward HospitalDistrict, 117 So. 2d 550 (Fla. 2d DCA 1960) (where statute requires that public body award contracts to low bidder, proper municipal authorities have wide discretion in determination of lowest responsible bidder).
[16] See s. 1, Ch. 2005-224, Laws of Florida, amending s.287.055(2)(g), Fla. Stat.
[17] See Tallahassee Memorial Regional Medical Center, Inc. v.Tallahassee Medical Center, Inc., 681 So. 2d 826, 830 (Fla. 1st DCA 1996); Holly v. Auld, 450 So. 2d 217, 218 (Fla. 1984); and Reino v.State, 352 So. 2d 853, 860 (Fla. 1977).